# Richmond.

## MILLER JONES v. COMMONWEALTH.

86  661
86  667

### MARCH 13th, 1890.

1. CRIMINAL PROCEEDINGS—*Remedial laws.*—Every state may control the remedies furnished in her courts, and may at any time change the forms of procedure therein, and the laws in force in that respect at time of trial must prevail.

2. IDEM—*Preliminary examinations.*—By the law in force before May 1, 1888, accused, when indicted, was required to be sent before a justice for examination. By sec. 4003 of Code 1887, that requirement is omitted, and accused, indicted since then, need not have such preliminary examination, though the offense was committed before then.

Argued at Wytheville.    Decided at Richmond.

Error to judgment of the judge of the circuit court of Smythe county, denying a writ of error to the judgment of the county court of that county, rendered October 22, 1889, whereby Miller Jones, the plaintiff in error, was sentenced, in accordance with the verdict of the jury, to four years imprisonment in the penitentiary for horse-stealing.    Opinion states the case.

*A. P. Cole*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for the commonwealth.

LACY, J., delivered the opinion of the court.

The date of the commission of the offense, as charged, was October, 1887. Under the law in force at the time of the

commission of the offense, the law required that the accused, when indicted, should be sent before a justice of the peace for examination. Acts 1885–6, p. 522. But at the time of the trial, October, 1889, the law had been changed, and this requirement was omitted, and it was enacted that a *capias* should issue. Code Va. (in force May 1, 1888), sec. 4003. The law in force at the time of the trial was followed as to this, and the accused excepted; and, upon the adverse ruling of the court, he applied to the circuit court of Smythe county for a writ of error, which was denied. Whereupon the prisoner applied for a writ of error from this court, which was awarded.

At the time of the commission of the offense the law required that the prisoner should be sent before a justice of the peace to be examined. Acts 1885–6; *Chahoon's case*, 20 Gratt., 764; *Jackson's case*, 23 Gratt., 919; *Butler* v. *Com.*, 81 Va., 161. But at the time of the trial, October, 1889, the present Code had gone into effect, and by section 4003 it is provided that, upon an indictment, the court shall award process, which shall be a *capias*, which was the method pursued in this case. And the sole question for us to determine in this case, is whether the proceedings of the court at the time should conform to the law at that time in existence or to the proceedings prescribed by the law in force when the crime was committed, in a case where the law, as to matters of form and procedure, has been changed between the period when the offence was committed and the period when the trial takes place.

By our constitution the legislature possesses all legislative power. It is the province of the legislature to enact laws, but upon well-settled principles, and by all known rules of interpretation, the general rule, as to its power, is prospective; it is endowed with power to enact laws. Laws are rules of civil conduct prescribed for, and attaching themselves to, the future actions of men. They must, from necessity and from their nature, be prospective; otherwise they cannot be rules of civil conduct. Laws cannot attach themselves to conduct antecedent

to the creation of the rules themselves.    This would be a thing impossible, for at the time the particular transaction took place, there being no rule, a law subsequently passed was not, and, from the nature of the case, could not have been, an existing rule governing such a transaction.    It would not then be, in that case, a rule of civil conduct.    The conduct of the party must stand acquitted or condemned, be lawful or unlawful, when judged by rules which had existence at the time the transaction took place.    It would be monstrous were it otherwise. The future alone can be called upon to observe the dictates of new rules.    It has been justly said: To establish a rule by which a person should be required to shape his past conduct would be to legislate an absurdity—to grant what would be an utter impossibility.    Laws, as a rule of civil conduct, look not upon the past, but upon the future.    *Ex post facto* laws are prohibited, and while, in a general and literal sense, an *ex post facto* law is one passed in regard to an act after the act is done, in its most comprehensive definition it includes all retrospective laws, or laws governing or controlling past transactions, whether they are of a civil or of a criminal nature.    Justice Chase, in an early case (*Calder* v. *Bull*, 3 Dall., 390, August term, 1798), defines an *"ex post facto* law," within the meaning of the United States constitution, to be (1) one which makes an action done before the passing of the law, which was innocent when done, criminal; (2) or makes a crime greater than it was when committed; (3) or inflicts a greater punishment than the law annexed to the crime when committed; (4) or alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender.    They strictly extend to criminal cases and not to civil cases, and are restricted to the creation, and perhaps enhancement, of crimes and pains and penalties.    And Mr. Justice Field, in the later case of the Missouri test oaths (*Cummings* v. *Missouri*, 4 Wall., 277), defines it thus: "An *ex post facto* law is one which

imposes a punishment for an act which was not punishable at the time when it was committed, or imposes additional punishment to that then prescribed." But the legislature may pass a mere remedial act, which, in its effect, or by way of definition, may have a retrospective operation, by way of relation to past events. Such acts of legislation, when limited within the appropriate sphere, may undoubtedly be within the legislative power, and such acts have received judicial sanction. For the right to a particular remedy is not a vested right. This is the general rule, and the exceptions are of those peculiar cases where the remedy is a part of the right itself. As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. *Rosier* v. *Hale*, 10 Iowa, 470; *Watson* v. *N. Y. Central Railroad Co.*, 47 N. Y., 157. It may abolish one class of courts and create another. It may give a new and additional remedy for a right already in existence. *Hope* v. *Jackson*, 2 Yerg., 125. And it may abolish old remedies and substitute new. If a statute providing a remedy is repealed while the proceedings are pending, such proceedings will be thereby determined, unless the legislature shall otherwise provide. *Bank of Hamilton* v. *Dudley*, 2 Pet., 492. And if it be amended instead of repealed, the judgment pronounced in such proceedings must be according to the law as it then stands. *U. S.* v. *Passmore*, 4 Dall., 372; *Com.* v. *Duane*, 1 Bin., 601; *Com.* v. *Marshall*, 11 Pick., 350. And any rule or regulation with regard to the remedy which does not, under pretense of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of the legislature. *Dash* v. *Van Kleeck*, 7 Johns., 477; *Westervelt* v. *Gregg*, 12 N. Y., 211. The case of *Ewing* v. *Commonwealth*, 5 Gratt., 701, cited by the learned circuit judge, is a case much in point.

In that case it was held that " though at the time the felony charged was committed, and at the time of the arrest of the prisoner, the law in relation to called courts was unrepealed,

yet if before the commitment the act abolishing called courts had gone into effect, it was proper for the committing justice to send the prisoner to be tried according to the new law. In arraigning the prisoner, however, it was proper to charge the jury under the law which was in force at the time the offense was committed." At the trial of the case in question, or in the proceedings leading up to and preliminary to the trial, it was necessary and proper to follow the mode prescribed by the law existing and in force at that time. It was the rule of the court's procedure, and could only be departed from in the particular case, upon the ground that, in changing the mode of procedure in such cases, an additional burden had been placed upon the prisoner in one of the ways heretofore mentioned; whereas, the amended law in no way affected the prisoner's rights, but concerned only the procedure, and in the mode of procedure it does not appear that he had any vested right, or that any right of defence which he had was taken away or in any wise impaired. So far as the degree of the crime, the nature of the evidence required, and the character of the punishment inflicted for the offense of which he was charged, the law had not been changed, and as to these he was duly tried by the laws in force at the time the offense was committed. It was competent for the legislature to change the proceedings in the courts of the state, and his rights were not affected unless some existing right was taken away or impaired, or some additional burden placed upon him, not existing at the time of the commission of the offense. He had no vested right to be proceeded against in one preliminary mode more than the other; and we think there is no force in his objection that he was not sent before an examining justice under the mandate of a law which had been repealed; and we are of opinion to affirm the judgment complained of.

JUDGMENT AFFIRMED.