# Richmond

CARVEL BENSON v. COMMONWEALTH OF VIRGINIA.

March 13, 1950.

Record No. 3656.

Present, All the Justices.

746

The opinion states the case.

*Ashburn, Agelasto & Sellers*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Frederick T. Gray, Special Assistant*, for the Commonwealth.

STAPLES, J., delivered the opinion of the court.

Carvel Benson, the plaintiff in error (defendant below and hereinafter so-called), was tried in the Corporation Court of the City of Norfolk upon an indictment charging him with bribery, in violation of section 4496 of the Code of Virginia. Pursuant to a jury verdict of guilty he was sentenced to confinement for a term of three years in the State penitentiary.

The evidence of the Commonwealth tended to show that the defendant was engaged in the operation of what is

generally known as a "numbers racket," and that he paid protection money to twenty-three officers of the Norfolk police force to avoid the arrest of his men engaged in that enterprise. The defendant himself did not take the witness stand but introduced other witnesses to refute the evidence of the prosecution.

The first assignment of error challenges the validity of the indictment because it was found by a special grand jury panel selected from a list furnished by the judge of the corporation court in accordance with section 4854 of the Code. It is contended that its personnel was chosen from a selected class of citizens which did not represent a fair cross section of the community, and that such procedure was a denial of due process of law and equal protection of the laws under the Fourteenth Amendment.

It appears that the grand jury in this case was not selected solely for the purpose of considering the charges against the defendant, but that, at the time the defendant's indictment was returned, forty or fifty other indictments were found by the same grand jury.

It has long been the practice in Virginia to empanel special grand juries so chosen to investigate unlawful conditions which have become prevalent in a community, and this action has been uniformly sustained by the decisions of this court. *Shinn* v. *Commonwealth*, 32 Gratt. (73 Va.) 899; *Hausenfluck* v. *Commonwealth*, 85 Va. 702, 8 S. E. 683.

While section 4866 of the Code prevents the trial of a person on a *felony* charge except upon a presentment or indictment found by a grand jury, this is purely a statutory requirement and is not predicated upon any constitutional guarantee. *Pine* v. *Commonwealth*, 121 Va. 812, 93 S. E. 652.

The defendant relies principally upon *Thiel* v. *Southern Pac. Co.*, 328 U. S. 217, 66 S. Ct. 984, 90 L. ed. 1181, 166 A. L. R. 1412, which reversed the decision of a United States District Court in a civil action for damages for personal injuries on the ground that the District Court had followed

a practice of systematic and intentional exclusion from juries of persons who worked for a daily wage. It was held that such method of selection of juries constituted a failure to abide by the proper rules and principles of jury selection, and that the exclusion of those who worked for a daily wage was not justified either by the Federal or State laws applicable. The opinion of the court emphasizes, however, that its reversal of the judgment was not based upon the denial of any constitutional guarantee but "in the exercise of our power of supervision over the administration of justice in the Federal courts."

In the later case of *Fay* v. *New York*, 332 U. S. 261, 67 S. Ct. 1613, 91 L. ed. 2043, the Supreme Court refused to disturb a judgment of conviction of the defendants in a New York State court which was challenged upon substantially the same ground as that on which a reversal was based in the *Thiel Case*. In the opinion by Mr. Justice Jackson, the distinction is clearly drawn between an attack upon the validity of a State court trial and one in a lower Federal court. In a State court, unless the exclusion from the jury is in violation of the act of Congress of March 1, 1875, prohibiting disqualification for jury service on account of race, color, or previous condition of servitude, the opinion concludes that, since no constitutional rights are violated by the selection of jurors who are not representative of the various groups of citizens in the community, the Supreme Court is not justified in setting aside a judgment entered on the verdict of a jury so constituted.

We find no merit in this assignment.

In the second assignment of error the defendant contends that he has been deprived of due process of law in violation of the Fourteenth Amendment, and also in violation of section 8 of the Virginia Bill of Rights, by the refusal of the police justice for the city of Norfolk to conduct a preliminary hearing after he had been arrested on a warrant returnable to that court. It appears that, when the defendant insisted on having a preliminary hearing before witnesses

were allowed to appear before the grand jury, the attorney for the Commonwealth dismissed the warrant. The defendant insists that the purpose of such dismissal was to deprive him of the preliminary hearing and hence of his constitutional rights.

In *Jones* v. *Commonwealth*, 86 Va. 661, 10 S. E. 1005, it was held that an accused who has been indicted in a court of record may be tried on the indictment without any preliminary hearing. We know of no reason why the Commonwealth could not lawfully dismiss the warrant against the accused. The Commonwealth's attorney had complete authority over the conduct of the prosecution and was at liberty to dismiss the warrant if he thought it would expedite the proceedings. We hold that, under these circumstances, the defendant had no right, either statutory or constitutional, to be afforded a preliminary hearing prior to the finding of the indictment or to his trial thereon.

The defendant also contends that it was error to admit in evidence the testimony of C. V. Allen, a former police officer, of a telephone conversation, the effect of which was that there had been an admission by the defendant to the witness that he had a list of police officers to whom he was paying protection money through a man he had taking care of the payoff down at police headquarters. The objection to the testimony is that there was not sufficient evidence to establish the identity of the defendant as the person with whom the witness was talking on the telephone. The witness, Allen, testified that he had heard of the list in question and was told by another officer that he thought Allen's name was on the list; that Allen then obtained from some person, whose name he did not remember, a telephone number which he was told was that of the office of the defendant. Allen was also unable to remember the telephone number which he called, but he testified that he asked to speak to Benson, the defendant, and the party answering said he was Benson. Allen thereupon inquired whether his name was on the list and the party said "yes" and, in reply to the

question from Allen as to why it was on the list, the party said "You are supposed to know why"; that Allen was supposed to get $10 a month from the payoff man down at headquarters.

Allen testified that prior thereto he had never met the defendant, had never talked to him, and did not know whether it was the defendant to whom he talked by telephone on that occasion. He had never heard defendant's voice and did not claim to have recognized it as such.

In *Zurich General Acci., etc., Ins. Co. v. Baum*, 159 Va. 404, 411, 165 S. E. 518, we held that testimony of a telephone conversation by a witness who communicated through the telephone maintained by a business office was admissible without any further identification of the person answering, where the conversation related to the transaction of business with the office.

Where, however, the testimony of the witness relates to a conversation between him and another particular individual, it is the general rule that in order to be admissible in evidence the identity of the person with whom the witness claims to have been speaking must be satisfactorily established. It is generally held that, where the witness had called a listed telephone number of such person and the person answering the telephone stated that he was the person whose telephone number was called, this is a sufficient identification to render the testimony admissible if the nature of the conversation was such as would ordinarily be expected with the party called. 31 C. J. S., Evidence, section 188.

A statement of his identity by the party called, standing alone, is not generally regarded as sufficient proof of such identity unless it is corroborated by other circumstances. 20 Am. Jur., Evidence, section 368; Anno. 71 A. L. R. 41.

The authorities seem to be uniform in the holding that, in order for such a conversation to be admissible by reason of the fact that the party called answered and stated that he was the party sought and entered into a conversation properly bearing on the subject matter discussed, it is first

necessary that the identity of the telephone itself as the telephone of the other party must be established. It is in this respect that the testimony of Allen fails to measure up to the requirement necessary to identify the defendant. He did not obtain the number of the defendant from a telephone directory. On the other hand, he testified that the number was given to him by some person whose name he did not remember, nor did he remember the number of the telephone which he called and to which the defendant allegedly responded. Inasmuch as the witness does not fix with certainty the fact that the defendant's telephone was the one which he called, we think his testimony as to the conversation alleged to have occurred between him and the defendant was clearly inadmissible.

The Attorney General argues that, although it is true that the correctness of the defendant's telephone number was established only by the hearsay statement of some unknown person, and, therefore, cannot be accepted as necessarily correct, nevertheless the identity of the defendant as the person who was talking to the witness is established by what the witness claims was said to him, and that this should serve as sufficient corroborating evidence to identify the defendant as the other party to the conversation. We cannot agree.

The statement alleged to have been made by the defendant, which, in effect, admitted that he was bribing police officers and accusing the witness Allen of being one of those who had been bribed, must be regarded, under the circumstances, as a most improbable occurrence. The evidence shows that the defendant's offices had been raided, and that the newspapers had published a statement that a list of police officers, who it was supposed were being bribed, was said to have been found in the defendant's place of business. It would hardly be expected that under these circumstances the defendant would make the statement attributed to him to a person claiming to be a police officer, and who was unknown to him personally. We, therefore, cannot regard such alleged statement as corroborating evidence of the identity

of the defendant as the person who made it. It is not such a reply as would naturally have been expected of the defendant under the circumstances.

It appears from the record that there had been two previous trials of the defendant on the charges contained in the indictment, and that in both trials the juries failed to agree upon a verdict. The effect of the testimony of the witness Allen was that the defendant had admitted to the witness in the course of the telephone conversation that he was guilty of having bribed the officers whose names appeared upon the list in question. There can be no doubt that this testimony may have been very damaging to the defendant and it must be held to have been sufficiently prejudicial to require a reversal of the judgment of conviction and the awarding of a new trial.

The defendant also contends that his counsel should have been allowed greater latitude in cross-examining the witness Withrow. He testified that he had prepared the list of police officers, had written his name and telephone number on it, and delivered it to the defendant; whereupon, the defendant turned over to him $240 to be distributed among the various police officers on the list. Defendant's counsel was permitted on cross-examination to develop the fact that the witness had previously raised money for a similar purpose from other numbers operators in the city of Norfolk. The court, however, sustained objections to questions with respect to various details of the witness' transactions with the other operators, on the ground that these matters were collateral and not relevant to the issue before the jury. We agree with the trial court that the facts sought to be developed by defendant's counsel on such cross-examination were improper. If admitted, they would have tended to confuse the jury and distract attention from the real issues involved.

We think the court properly admitted the testimony of Sergeants Watson and Towe, which the defendant also assigns as error.

The defendant complains of the refusal of the trial court to give four instructions, D-3, D-4, as offered, D-5, and D-8.

It appears from the instructions granted that the jury was fairly instructed on the issues involved, and that those offered by the defendant were properly refused.

For the error in admitting the testimony of C. V. Allen, with respect to his alleged telephone conversation with the defendant, the judgment complained of must be reversed and the defendant awarded a new trial.

*Reversed and remanded.*