**Richmond**

RUBY STANLEY ARMES

v.

COMMONWEALTH OF VIRGINIA

No. 0070-85

Decided October 7, 1986

COUNSEL

Thomas L. Phillips, Jr.; Richard W. Elliott (Kizer, Phillips & Petty, on briefs), for appellant.

Thomas C. Daniel, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Ruby Stanley Armes was convicted of the felony of soliciting another person to commit murder in violation of Code §§ 18.2-29 and 18.2-30 and sentenced to a term of five years in the penitentiary. She contends (1) that the circuit court erred in admitting testimony concerning telephone conversations between a testifying witness and a person identified only as "Linda" because the evidence did not sufficiently establish that Armes was "Linda" and (2) that the evidence upon which the conviction was based was circumstantial and insufficient to exclude all reasonable hypotheses consistent with innocence.

On the Commonwealth's representation that subsequent evidence would identify the caller, the first witness, Michael Coffey, was permitted to testify concerning several telephone calls he received from a person who called herself "Linda." The court instructed the jury that Coffey's testimony was being admitted subject to later proof as to the caller's identity.

Coffey, the brother of Armes' son-in-law, first received a message at work, in March, 1984, that "Linda" had called for him.

Several days to a week later "Linda" called him at home and asked if he was interested in doing some work for her. When Coffey answered affirmatively, "Linda" asked: "Even if it's illegal?" She told him to think about the offer and said she would call again. Coffey reported the call to the Lynchburg Police, telling them he had no idea who "Linda" was.

One week later "Linda" called again and asked if Coffey was still interested in her proposal. She told him that she was calling for her boss, "Jack," who wanted his wife killed, and asked if Coffey was interested in making $10,000. Coffey reported the second call to the police and was instructed to find out more details if "Linda" called again.

"Linda" called a third time and told Coffey that "Jack" would contact him to settle the details of the proposal. The police then installed a recording device on Coffey's telephone. The police intercepted several telephone calls to Coffey from "Jack" and observed a meeting between the two men during which Coffey received $2,000 and a photograph of "Jack's" wife. "Jack" was Dr. Robert Stickle; he was arrested after the meeting and subsequently convicted of soliciting murder.

Coffey could not identify "Linda" at trial; he did say that the caller had the same type of accent as Armes, who he did not know very well and to whom he had talked only a few times.

The Commonwealth's evidence further established that Stickle and Armes became romantically involved in September, 1983. Stickle testified that, after his wife discovered the affair, he told Armes that he would not divorce his wife. Armes told him that he had ruined her family and marriage, and that he had to do something. Armes also said that, because Stickle would not divorce his wife, she would find someone to take his wife out of the picture.

Stickle further testified that in early April, 1984, Armes told him that she had found someone to murder his wife. The person was "Mike," her son-in-law's brother, who needed money. Armes gave him "Mike's" telephone number and instructed him to say he was "Linda's" friend. Stickle testified that he called "Mike" after an argument with his wife.

Pinkney Harmond, a friend of Armes, described a social evening, which occurred two or three weeks before Stickle's arrest,

during which Armes was emotionally upset and asked Harmond if she knew someone who needed a large sum of money "[t]o bump somebody off." On another occasion, while in Harmond's presence, Armes wished that something would happen to Stickle's wife so that Armes and Stickle could be together.

■ Armes admits that it is possible to establish the identity of the parties to a telephone conversation by circumstantial rather than direct evidence, but contends that *Benson v. Commonwealth*, 190 Va. 744, 58 S.E.2d 312 (1950) sets a "stringent" standard for establishing identity by circumstantial evidence which the Commonwealth failed to meet in this case. In *Benson*, the testifying witness dialed a telephone number which he could not recall and which he had received from someone whose identity he could not recall. The person who answered the telephone identified himself as the person the testifying witness had sought to call. The Supreme Court observed:

> [A] statement of his identity by the party called, standing alone, is not generally regarded as sufficient proof of such identity unless it is corroborated by other circumstances.

*Id.* at 751, 58 S.E.2d at 315 (citations omitted). The Court analyzed the factual circumstances, determined that the inference of identity to be drawn from the evidence was most improbable, and concluded that there was insufficient evidence to corroborate the identity of the person who answered the telephone. We do not discern in the *Benson* holding the establishment of a "stringent" standard for proving identity by circumstantial evidence.

■ Although there are no Virginia cases which address the precise factual circumstances of this case, we believe the general rule of admissibility of telephone conversations as stated in *Benson* is applicable to this case:

> Where . . . the testimony of the witness relates to a conversation between him and another particular individual, it is the general rule that in order to be admissible in evidence the identity of the person with whom the witness claims to have been speaking must be satisfactorily established.

*Id.* at 751, 58 S.E.2d at 314.

■ Furthermore, the identity of the person with whom the witness spoke may be established by circumstantial evidence. *See Opanowich v. Commonwealth*, 196 Va. 342, 351, 83 S.E.2d 432, 438 (1954). These rules are consistent with the holdings in other jurisdictions. *See* Annot., 79 A.L.R.3d 79 (1977). Moreover, we find the following analysis persuasive and consistent with *Benson* and *Opanowich*:

> Communications by telephone are admissible in evidence where they are relevant to the fact or facts in issue, and admissibility is governed by the same rules of evidence concerning face-to-face conversations except the party against whom the conversations are sought to be used must ordinarily be identified. It is not necessary that the witness be able, at the time of the conversation, to identify the person with whom the conversation was had, provided subsequently identification is proved by direct or circumstantial evidence somewhere in the development of the case. The mere statement of his identity by the party calling is not in itself sufficient proof of such identity, in the absence of corroborating circumstances so as to render the conversation admissible. However, circumstances preceding or following the conversation may serve to sufficiently identify the caller. The completeness of the identification goes to the weight of the evidence rather than its admissibility, and the responsibility lies in the first instance with the . . . court to determine within its sound discretion whether the threshold of admissibility has been met.

*State v. Williamson*, 210 Kan. 501, 504, 502 P.2d 777, 780 (1972) (citations omitted); *see also United States v. Espinoza*, 641 F.2d 153, 168-71 (4th Cir.), *cert. denied*, 454 U.S. 841 (1981); *Kansas Electric Supply Co. v. Dun & Bradstreet, Inc.*, 448 F.2d 647, 650-51 (10th Cir. 1971); *State v. Williams*, 64 Ohio App. 2d 271, 413 N.E.2d 1212, 1214-15 (1979); *Benson v. State*, 571 P.2d 595, 600-01 (Wyo. 1977).

The circumstantial evidence by which the Commonwealth attempted to prove that "Linda" and Armes were the same person was quite detailed. "Linda" knew the telephone numbers at Coffey's place of employment and residence. She knew that "Jack" wanted someone to kill his wife and that "Jack" would

contact Coffey to arrange the details. She knew that "Jack" would be willing to pay $10,000 for the murder and wanted to know if Coffey was interested in making a large sum of money. One who had identified himself to Coffey as "Jack" later met with Coffey to make arrangements for a murder.

Armes had discussed with Stickle the possibility of finding someone to murder his wife. She knew that Coffey, her son-in-law's brother, needed money desperately. One day after "Linda's" last call to Michael Coffey, Armes told Stickle that "Mike" was willing to kill Stickle's wife. Armes gave Coffey's telephone number to Stickle and told him to identify himself as "a friend of Linda's." Stickle had no prior knowledge of Coffey. When he initially balked at calling Coffey, Armes became very emotional and made reference to "all the trouble she had gone to."

The evidence also established that during the time that Coffey was receiving the telephone calls from "Linda," Armes was attempting to find "anybody that needed a large sum of money. . .[t]o bump somebody off." Armes also expressed a desire to see Stickle's wife dead because she would not divorce Stickle.

The trial judge did not err in finding that a proper foundation had been laid for the admission of the testimony regarding the telephone calls. It was the jury's function to determine the weight of the circumstantial evidence linking the calls to Armes. *See State v. Williams*, 201 Kan. at 504, 502 P.2d at 780; *see also United States v. John*, 518 F.2d 705, 709 (7th Cir. 1975).

■ At the time of its ruling permitting the testimony, the trial court had no information regarding the nature of the circumstantial evidence that the Commonwealth intended to offer and relied upon the representation that subsequent evidence would establish Armes as the caller. In view of the long-standing rule in Virginia that the order of proof is within the sound discretion of the trial court, *see Quintana v. Commonwealth*, 224 Va. 127, 142, 295 S.E.2d 643, 650 (1982), *cert. denied*, 460 U.S. 1029 (1983); *Hargraves v. Commonwealth*, 219 Va. 604, 608, 248 S.E.2d 814, 817 (1978), and our holding that there was sufficient circumstantial evidence to create a jury issue, we conclude that the trial court's decision to admit the evidence solely upon the Commonwealth's assurance that it would provide sufficient evidence to create a jury

issue as to the identity of the caller was not an abuse of discretion.[1]

Finally, Armes contends that the evidence was insufficient to support a conviction for soliciting another person to commit murder because it did not negate all reasonable hypotheses of innocence. We disagree.

Armes testified that, after Stickle's wife learned of the affair, Stickle told Armes he wanted to marry her and needed time to convince his wife to give him a divorce. Armes also testified that Stickle asked her in early March if she knew anyone interested in doing garden work. Armes checked with her husband and gave Stickle the name and address of Michael Coffey. Armes said that she did not know Coffey's telephone number. According to Armes, Stickle told her that instead of confronting his wife about a divorce he had given her tranquilizers and a heart medication mixed in a breakfast drink, and then hit her on the head with a pan. Armes said she broke off her relationship with Stickle shortly after he told her of his attempt to kill his wife.

Stickle's wife was called as a defense witness and testified that she once awoke with a head laceration after a nightmare. She asserted that the injury occurred when she struck her head against the headboard of a bed and that she and Stickle joked publicly about whether the injury had been inflicted with a frying pan or rolling pin.

Stickle testified on rebuttal and denied Armes' version of how he came to learn of Coffey.

---

[1] We recognize the possibility that in a given case (although not this one) the subsequent proof as to identity may be insufficient to provide a foundation for admission of the contents of a telephone conversation. The court, of course, would have to strike the evidence about the conversation and instruct the jury accordingly. Nevertheless, the possibility that the failure to identify the caller would result in some residual prejudice to the accused suggests that the better practice is to deal with this issue before trial. In this case, the defense had prepared a memorandum addressing the evidentiary question, and thus appears to have anticipated the matter. The court, however, was not apprised of the matter until Coffey had begun to testify. As noted above, the court allowed Coffey to testify on the Commonwealth's representation that subsequent testimony would identify "Linda" as Armes and after instructing the jury that Coffey's testimony was being admitted subject to later proof as to the identity of "Linda." Under these circumstances, we do not think the court abused its discretion.

Our examination of the record leads us to conclude that the Commonwealth's evidence proved beyond a reasonable doubt that motive, time, place, means, and conduct coincided in pointing to Armes as the perpetrator of the offense. *Underwood v. Commonwealth*, 218 Va. 1045, 1049, 243 S.E.2d 231, 233 (1978). It was within the jury's province to weigh the testimony of Coffey, Stickle and Armes and to decide from the evidence presented whether the telephone calls were made by Armes. *Opanowich*, 196 Va. at 353, 83 S.E.2d at 439. In viewing the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences flowing therefrom, *Comer v. Commonwealth*, 211 Va. 246, 249, 176 S.E.2d 432, 434 (1970), we hold that the record contains sufficient evidence upon which the jury could find that Armes was the criminal agent. Accordingly, the conviction is affirmed.

*Affirmed.*

Cole, J., and Duff, J., concurred.