COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Willis
Argued at Richmond, Virginia


CABELL RIFFE CLATTERBAUGH

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0801-09-2                      JUDGE WILLIAM G. PETTY
                                                         JULY 27, 2010
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Cheryl V. Higgins, Judge

             Charles L. Weber, Jr.,[1] for appellant.

             Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
             Cuccinelli, II, Attorney General, on brief), for appellee.


        A jury convicted appellant Cabell Riffe Clatterbaugh of statutory burglary, in violation of

Code § 18.2-90; attempted robbery, in violation of Code §§ 18.2-26 and 18.2-58; unlawful

wounding, in violation of Code § 18.2-51; and use of a firearm in the commission of a felony in

violation of Code § 18.2-53.1.  Clatterbaugh now challenges his convictions on appeal.  First,

Clatterbaugh argues that the trial court erred when it limited the scope of his cross-examination

of the Commonwealth's witnesses.  Second, Clatterbaugh maintains that the trial court erred by

refusing to grant his motions for a mistrial.  Third, Clatterbaugh contends that the trial court

abused its discretion when it admitted evidence without a proper foundation.  Fourth,

Clatterbaugh asserts that the trial court erred when it allowed the Commonwealth to impeach one

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] James Maloney represented Clatterbaugh at trial.

of its witnesses with prior inconsistent statements.  For the reasons discussed below, we disagree with Clatterbaugh and affirm his convictions.

I.

In accord with well-settled appellate principles, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of these narrow questions presented on appeal.

During the early morning hours of July 27, 2007, Clatterbaugh knocked on the front door of a home in Albemarle County.  When one of the residents of the home, Joshua Mayo, opened the front door, Clatterbaugh forced his way in.  Almost immediately, Clatterbaugh struck Mayo over the left eye with a pistol.  At that time, one of Mayo's guests, who had gone to school with Clatterbaugh, began to scream "Stop, Cabell, stop."  Rather than stopping, Clatterbaugh forced Mayo in front of him, and, with a pistol pressed to the back of Mayo's head, walked him around the house demanding money.  When Clatterbaugh and Mayo arrived in the home's upstairs bathroom, Mayo pointed to a kitty litter box in the floor and said, "Here's your money."  When Clatterbaugh looked down, Mayo fled, slammed the bathroom door behind him, and ran to the neighbors' house for help.

II.

A.  Cross-Examination

Clatterbaugh argues that the trial court abused its discretion by limiting his cross-examination of the complaining witness, Joshua Mayo, on two separate occasions.  First,

the trial court limited Clatterbaugh's questions regarding Mayo's drug use and the presence of drugs in the home that Clatterbaugh invaded. Second, the trial court limited Clatterbaugh's cross-examination of Mayo regarding his identification of Clatterbaugh in a photograph lineup. As discussed below, the trial court did not abuse its discretion, and instead properly limited cross-examination.

The "[l]imitation of cross-examination is a matter within the sound discretion of the trial court and is subject to review only for abuse of discretion." Naulty v. Commonwealth, 2 Va. App. 523, 529, 346 S.E.2d 540, 543 (1986). Further, we will not reverse a trial court's determination to limit the scope of cross-examination unless it is plain from the record that the court's ruling has prejudiced the cross-examiner's case. Worrell & Williams v. Kinnear Mfg. Co., 103 Va. 719, 724, 49 S.E. 988, 990 (1905).

### 1. Theft of Drugs Argument

Clatterbaugh's victim, Joshua Mayo, admitted on direct examination that he had consumed alcohol, marijuana, and cocaine the evening before Clatterbaugh broke into his home. On cross-examination, the defense questioned Mayo regarding his preliminary hearing testimony in which he stated that he had not taken any drugs during the relevant time, and Mayo admitted lying in his earlier testimony. The defense also questioned Mayo about the amount of alcohol, marijuana, and cocaine he had consumed during the evening, and whether he was impaired after consuming the alcohol and drugs. Then, the defense sought to question Mayo about the amount of drugs in the house and whether he was holding drugs for his fiancée's brother on that evening. When the Commonwealth objected to the new line of questioning, the trial court excused the jury and heard argument on the objection. The defense explained that its theory of the case was that Mayo was holding a quantity of drugs and that the motive for the break-in was the theft of drugs.

The trial court sustained the objection on the grounds that the defense's line of questioning was irrelevant. Defense counsel never made a proffer of the excluded evidence.

In order to preserve an appellate challenge to the trial court's limitation of cross-examination, the cross-examiner must make a proper proffer of the excluded testimony. Stewart v. Commonwealth, 10 Va. App. 563, 568, 394 S.E.2d 509, 512 (1990). "A proper proffer may consist of a unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected," or the witness may testify outside the presence of the jury for the record. Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). "[A]n appellate court has no basis for adjudication" without a proffer of excluded testimony. Id.

We conclude that Clatterbaugh did not make a proper proffer of the evidence he hoped to elicit from Mayo regarding his theft of drugs theory. Although defense counsel explained his theory of the case to the trial court, he did not explain to the trial court what testimony he expected to elicit from Mayo that would support that theory, nor did he seek to examine Mayo outside the presence of the jury to preserve the excluded testimony for review. Further, the record does not show any stipulation of the parties as to this issue. Without that proffer, this Court has no way to determine whether the trial court erred in limiting the defense's cross-examination, because we have no basis upon which to determine relevance or prejudice. See Evans v. Commonwealth, 39 Va. App. 229, 236, 572 S.E.2d 481, 484 (2002). Hence, we hold that the record is insufficient to determine whether the trial court erred in limiting the scope of cross-examination on the issue of the amount of drugs in the residence. Id.

## 2. Identification Argument

Later during cross-examination, defense counsel asked Mayo a series of questions regarding his failure to identify Clatterbaugh in an out-of-court photograph array. According to Mayo's testimony on cross-examination, defense counsel had approached Mayo in the

courthouse immediately before the preliminary hearing in this case. Defense counsel, without identifying himself as such, showed Mayo twelve photographs of "twenty-something white males of medium height, medium built, et cetera." Mayo testified that he picked "two to three" of the photographs that he thought were possibly of Clatterbaugh. Mayo testified, "it was just very confusing to look at these photos in everyday life sitting on a couch and with hats on and stuff, so I wasn't --- I remember three photos of what seemed to resemble him." At that point, the Commonwealth objected arguing that there had not been any "foundation." The Commonwealth explained "first of all" that there had been no testimony indicating that any of the pictures were of "Mr. Clatterbaugh or that, two, that this witness was able to—whether he was able to pick out who it was or who it wasn't. I think there needs to be more information from other witnesses before this type of examination can continue with respect to this witness."

The court sustained the Commonwealth's objection, and determined that "there would need to be a foundation set as to which one is Mr. Clatterbaugh, which one is not, verification if the witness cannot remember which ones he didn't pick . . . ." Defense counsel then requested to show the photographs to Mayo to "ask him whether or not these are the photographs that he identified." Again, the trial court determined that defense counsel would need to lay a foundation for the evidence before showing the photographs to the witness.

The next day, defense counsel called Clatterbaugh's mother, Jennifer Riffe, to lay the foundation for the photographic lineup. Ms. Riffe explained that she gave the photographs to defense counsel and that they were meant to be a representation of young men who were generally the same age and build as her son. The Commonwealth voir dired the witness, and established that Ms. Riffe was not present when the pictures were actually shown to Mayo, and thus could not testify whether the pictures she provided to defense counsel were the same pictures defense counsel showed Mayo. The Commonwealth did not, however, object to defense

counsel's continued examination of the witness. Ms. Riffe went on to identify each young man in the photographs—photographs she had gathered from her personal family photo albums. The trial court admitted the photographs over the Commonwealth's objection.

Following Ms. Riffe's testimony, defense counsel recalled Mayo to question him regarding the photographs. At that time, the witness confirmed that when he was first shown the photographs prior to the preliminary hearing in this case, he had marked three of the twelve photographs as being of young men who resembled Clatterbaugh. Defense counsel established, between Ms. Riffe's and Mr. Mayo's testimony, that Mayo had failed to identify the one photograph of Clatterbaugh that had been included in the photographic lineup.

After the foundation was laid, defense counsel had a full opportunity to examine Mayo regarding his failure to identify Clatterbaugh in the photograph lineup, and the photographs were introduced into evidence. Neither the record nor Clatterbaugh's brief on appeal indicates what else, if anything, Clatterbaugh hoped to accomplish by questioning Mayo regarding the photographs. Hence, Clatterbaugh was able to reach the testimony he sought from Mayo—that he had failed to identify Clatterbaugh in a photo lineup. And, while Clatterbaugh asserts on brief that the trial court obliging him to establish a foundation before admitting the photographs into evidence "required a complete change in trial strategy," he does not indicate what that change was, or how that change may have prejudiced him. "Relying upon the prior decisions of the Supreme Court, this Court has stated that, 'generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Crump v. Commonwealth, 20 Va. App. 609, 612-13, 460 S.E.2d 238, 239 (1995) (emphasis in original) (quoting Nichols v. Commonwealth, 6 Va. App. 426, 429, 369 S.E.2d 218, 220 (1988)). Here, Clatterbaugh had that opportunity, and the trial court committed no reversible error.

B.  Motions for Mistrial

Clatterbaugh moved for mistrial five times during trial, and now challenges the trial court's denial of all five of his motions.  Code § 8.01-361 allows a trial court to discharge a jury when there is a "manifest necessity" for the discharge, and the trial judge has broad discretion in determining situations in which a mistrial is appropriate.  Turnbull v. Commonwealth, 216 Va. 328, 335, 218 S.E.2d 541, 546 (1975).  We will not reverse the trial court's denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial.  Perez v. Commonwealth, 40 Va. App. 648, 654, 580 S.E.2d 507, 510 (2003).[2]

1.  Untimely Motions for Mistrial Made During Trial

a.  Mayo's Unelicited Comment

At the end of Mayo's testimony on the first day of trial, the court released Mayo for the day, and instructed him to, among other things, refrain from discussing the case.  Mayo then asked the court what he should do when "people on the other side approach [him]" outside of the courtroom.  The trial court instructed Mayo to walk away from those people without discussing the case.  Mayo then asked "And if I'm threatened?"  The Commonwealth indicated that someone outside the courtroom could help Mayo with his issue, and he left.  During Mayo's statements, defense counsel objected and stated that he "had a motion."

Rather than asking the jury to be excused and addressing his motion for a mistrial at that time, defense counsel waited until after the court had heard the testimony of another witness.  Only then did counsel assert that Mayo's statement was inappropriate, that Clatterbaugh was

---

[2] We note that the Commonwealth moved for a mistrial near the conclusion of evidence in this case.  All of the incidents about which Clatterbaugh complains on appeal had occurred by the time of the Commonwealth's motion for mistrial.  The record shows, however, that trial counsel vigorously opposed the Commonwealth's motion.  Given our holding that Clatterbaugh's motions were not timely, we need not reach the issue of whether he waived those motions by arguing against the granting of a mistrial upon request of the Commonwealth.

"unfairly prejudiced" by Mayo's statement, and that a mistrial was warranted. The trial court denied counsel's motion because Mayo did not indicate who specifically had threatened him; accordingly, the trial court concluded that there was no "manifest injustice" in continuing the trial. Defense counsel refused a cautionary instruction.

### b. Officer Kesner's Non-responsive Answer

Officer Ron Kesner of the Albemarle County Police Department testified at trial regarding his investigation of Clatterbaugh's crimes. During Officer Kesner's testimony regarding his investigative interview of a witness to the crimes who identified Clatterbaugh as the assailant, the Commonwealth asked "[w]hat words" the witness used to communicate her identification of Clatterbaugh. Officer Kesner responded, "Well, she relayed to me that she . . . used to go to school with Mr. Clatterbaugh and that that's how she knew him. She stated to me that she hadn't seen him in several years and that she knew that he had just recently been released from jail." At that point, defense counsel stated, "Judge, I'm going to object. I have a motion." The court did not respond, and the prosecution's direct examination continued. Although defense counsel objected to other questions, he did not address his motion, which was eventually revealed to be a motion for mistrial, until well after he commenced cross-examining Officer Kesner. At that time, defense counsel argued that Clatterbaugh should be granted a mistrial because Officer Kesner's testimony was "exceedingly prejudicial" to Clatterbaugh. The trial court took the mistrial motion under advisement.

### c. Discussion

We conclude that Clatterbaugh's motions for mistrial were untimely and were thus waived for appellate purposes. As the Supreme Court of Virginia has explained, "if a defendant wishes to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his

objection." Yeatts v. Commonwealth, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991) (citing

Russo v. Commonwealth, 207 Va. 251, 257, 148 S.E.2d 820, 825 (1966)).

In Yeatts, a prosecution witness testified that the defendant had told the witness about the

defendant's prior convictions. Id. at 136, 410 S.E.2d at 263. Defense counsel objected, and the

trial court sustained the objection. Id. at 136, 410 S.E.2d at 264. The prosecution's direct

examination continued without further objection. Id. At the conclusion of the witness'

testimony, defense counsel informed the court that he "had a motion." Id. at 137, 410 S.E.2d at

264. After the jury was excused, defense counsel argued that the defendant should be granted a

mistrial. Id. The Supreme Court held that this motion "fail[ed] the test of timeliness" because

the defense did not make the motion for mistrial "'when the objectionable words were spoken.'"

Id. (quoting Reid v. Baumgardner, 217 Va. 769, 774, 232 S.E.2d 778, 781 (1977)); accord

Morris v. Commonwealth, 14 Va. App. 283, 286-87, 416 S.E.2d 462, 464 (1992) (*en banc*).

Here, as in Yeatts, defense counsel failed to move for a mistrial "when the objectionable

words were spoken." Because of this delay, like that in Yeatts, we conclude that Clatterbaugh

waived his objection.

### 2. Unsupported Assertions of Error

Clatterbaugh asserts that the trial court abused its discretion when it failed to grant his

motions for mistrial following arguably improper testimony by three other witnesses.

Appellant's Br. at 16-20. Clatterbaugh, however, makes no legal argument in support of these

assertions of error. Indeed, his argument for each of these points is only a few sentences long,

and is devoid of citation to any legal authority supporting his position. "'An appellant who

asserts that a trial court's ruling was erroneous has an obligation to state clearly to the appellate

court the grounds for that assertion.'" Jenkins v. Commonwealth, 244 Va. 445, 461, 423 S.E.2d

360, 370 (1992) (quoting Spencer v. Commonwealth, 240 Va. 78, 99, 393 S.E.2d 609, 622

- 9 -

(1990)). Rule 5A:20(e) bars us from addressing any issues unsupported by authority. Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926 (2006) (*en banc*), aff'd, 273 Va. 410, 641 S.E.2d 77 (2007). As we have previously, and frequently, explained, "[a]ppellate courts are not unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible error." Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). Instead, if Clatterbaugh "believe[s] that the circuit court erred, it [is his] duty to present that error to us with legal authority to support [his] contention." Id.

In Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008), the Supreme Court announced that when a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant, "the Court of Appeals may . . . treat a question presented as waived." In this case, we find Clatterbaugh's failure to comply with Rule 5A:20(e) is significant. Accordingly, we will not address these questions presented on appeal.

### 3. Motions for Mistrial Made After the Jury Retired for Deliberation

After the jury had retired for deliberation, Clatterbaugh renewed his motions for mistrial. "A motion for a mistrial is untimely and is properly refused when it is made after the jury has retired from the courtroom." Schmitt v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 201 (2001). As discussed above, "[u]nless a defendant has made a timely motion for a cautionary instruction or for a mistrial, we will not consider his" related arguments on appeal. Id. at 148, 547 S.E.2d at 200.

### C. Admissibility of Telephone Call Evidence

Next, Clatterbaugh argues that the trial court's decision to admit a recording of a telephone conversation recorded at the Albemarle Charlottesville Regional Jail was erroneous because the proponent of the evidence, the Commonwealth, presented an inadequate foundation for the evidence. We disagree.

In Virginia, "conversations overheard on a telephone are admissible as substantive evidence when the identity of the parties to the conversation is established, either by direct evidence or by facts and circumstances." Opanowich v. Commonwealth, 196 Va. 342, 351, 83 S.E.2d 432, 438 (1954) (citations omitted); accord Benson v. Commonwealth, 190 Va. 744, 751, 58 S.E.2d 312, 315 (1950). Circumstantial evidence is sufficient to establish the identity of the parties to a telephone conversation, but a mere "'statement of his identity by the party called, standing alone, is not generally regarded as sufficient proof of such identity unless it is corroborated by other circumstances.'" Armes v. Commonwealth, 3 Va. App. 189, 192, 349 S.E.2d 150, 152 (1986) (quoting Benson, 190 Va. at 751, 58 S.E.2d at 315).

Here, one of the parties to the conversation identified himself as "Cabell," a somewhat distinctive name, and the other party to the conversation identified himself as "Snoop," another rather unique moniker. After the recording had come into evidence, the defense called Jamal Johnson as a witness, who testified on direct examination that his nickname was Snoop. On cross-examination, Johnson confirmed that he and Clatterbaugh had a telephone conversation when Clatterbaugh called him from jail, and indicated that they discussed the same subjects that were discussed in the recorded conversation that had already been played for the jury.

The Commonwealth also presented evidence from Gaquetta Murray-Key, the jail employee who is responsible for assigning each inmate a unique PIN so that the inmate can access the jail telephone system through a prepaid account. Ms. Murray-Key also testified that she prints out the PINs, seals them, and mails them to the inmates through the jail post office system. Ms. Murray-Key also explained that the only way an inmate can make a telephone call is to dial in the PIN and the telephone number of the person the inmate is calling. Ms. Murray-Key stated she explained to each inmate that the PIN is not to be shared and that the inmates receive a sticker reminding them of that as well. Finally, Ms. Murray-Key told the court

- 11 -

that she retrieved the recording of the telephone call the Commonwealth sought to introduce into evidence by typing Clatterbaugh's name into the jail computer system, which then pulled recordings of all of the telephone conversations made under Clatterbaugh's unique PIN.

We conclude that there was sufficient corroboration of the identity of the parties to the telephone conversation and that the trial court properly admitted it into evidence. Both parties identified themselves during the call, and, while Johnson did not listen to the recording and confirm that it was him speaking, he did testify that he had a telephone conversation with Clatterbaugh during the relevant time, and testified to the substance of that conversation. The same substance was included in the recorded conversation. And, while this testimony was subsequent to the admission of the recording into evidence, "the long-standing rule in Virginia [is] that the order of proof is within the sound discretion of the trial court." Armes, 3 Va. App. at 195, 349 S.E.2d at 154 (citing Quintana v. Commonwealth, 224 Va. 127, 142, 295 S.E.2d 643, 650 (1982); Hargraves v. Commonwealth, 219 Va. 604, 608, 248 S.E.2d 814, 817 (1978)).

Prior to moving to admit the recording into evidence, the Commonwealth also presented Ms. Murray-Key's testimony establishing that a telephone call made with a prisoner's unique PIN was, in all likelihood, made by that prisoner. Any possibility—however slim—that another prisoner had stolen Clatterbaugh's PIN and had made telephone calls during which he identified himself as "Cabell" and called Clatterbaugh's friend "Snoop" went to the weight of the evidence, rather than its admissibility. See id. at 194, 349 S.E.2d at 154 ("It was the jury's function to determine the weight of the circumstantial evidence linking the calls to [Clatterbaugh]." (citing State v. Williams, 502 P.2d 770, 780 (Kan. 1972))).

### D. Impeachment of Michelle Laman with Prior Inconsistent Statements

Finally, Clatterbaugh contends the trial court erred when it allowed the Commonwealth to impeach its witness when she gave testimony adverse to the Commonwealth's case that,

Clatterbaugh alleges, the Commonwealth had reason to expect. Because we determine that the Commonwealth only had reason to believe that the witness was reluctant to testify, as opposed to notice that she would testify adversely, we conclude that the trial court properly allowed the Commonwealth to impeach the witness with her prior statement.

According to Code § 8.01-403, which is applicable in both criminal and civil cases, "[a] party producing a witness . . . may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that [the witness] has made at other times a statement inconsistent with his present testimony . . . ." See Ragland v. Commonwealth, 16 Va. App. 913, 920, 434 S.E.2d 675, 680 (1993). "'A party's own witness proves adverse if the witness surprises the party by changing stories or becoming hostile on the stand.'" Wells v. Commonwealth, 32 Va. App. 775, 784, 531 S.E.2d 16, 20 (2000) (quoting Maxey v. Commonwealth, 26 Va. App. 514, 519, 495 S.E.2d 536, 539 (1998)). The determination of whether a witness is unwilling to testify or hostile is a matter that rests with the discretion of the trial court. Weller v. Commonwealth, 16 Va. App. 886, 892, 434 S.E.2d 330, 335 (1993).

Laman was present at the scene of the crime, as she was one of the victim's friends who was visiting him and helping him pack for his upcoming move. When law enforcement first interviewed Laman, she told them that she had been looking out of the house's front window and had seen the assailant's vehicle pull up in front of the house. She thought that the person who exited the car was Cabell Clatterbaugh, with whom she had attended middle school. In fact, she reported that, as she looked out the window that early morning, she said, "Cabell's here." She told law enforcement that she knew it was Clatterbaugh because the individual was driving Clatterbaugh's car and because he was wearing the "thug-type" clothing that Clatterbaugh favored. Laman also told the officer that she was frightened to testify because of the "kind of

people they are" and that she did not want to testify because she had been retaliated against when she testified in another matter involving other parties.

At trial, Laman testified that she was extremely intoxicated on the night and early morning of the crime, that she had not seen Clatterbaugh in seven years, and that she never saw the person closely. She testified that the individual "could have been anyone" and that she no longer believed it to have been Clatterbaugh. Although the Commonwealth knew that Laman was reluctant to testify based on the March 3, 2008 interview, it did not know that Laman was going to recant her previous statement and now testify that the assailant was not Clatterbaugh. Accordingly, the trial court did not abuse its discretion by determining that the Commonwealth's witness had proven adverse and allowing the Commonwealth to impeach her with her prior inconsistent statement.

III.

For the foregoing reasons, we affirm Clatterbaugh's convictions.

Affirmed.