COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


KENYON E. McEACHERN

OPINION BY
v.            Record No. 0063-08-1          JUDGE D. ARTHUR KELSEY
OCTOBER 21, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Charles E. Haden for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Joshua M. Didlake, Assistant Attorney General, on
brief), for appellee.


The trial court convicted Kenyon E. McEachern of grand larceny of a vehicle in violation

of Code § 18.2-95(ii).  On appeal, McEachern argues the evidence failed to prove he intended to

permanently deprive the victim of her vehicle.  We disagree and affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

The evidence at trial established that the victim, McEachern's pregnant girlfriend, drove

him in her vehicle to his mother's house in Newport News.  On the way, McEachern angrily

accused the victim of being unfaithful to him.  When she attempted to make a call on her cell

phone, McEachern snatched it from her and threw it out the car window. The victim stopped her vehicle and stepped out to find her cell phone. McEachern followed her, grabbed her by the hair, forced her back into the vehicle, and ordered her to continue driving him to his mother's home. During the drive, McEachern physically assaulted the victim (smacking or pushing her in the head multiple times) and announced that she was "going to make [him] fucking hurt [her]."

When they arrived at his mother's house, McEachern "put the car in park himself and took the keys out of the ignition." The victim asked to leave. McEachern said he would "beat [her] ass" if she did not accompany him into the house. Once inside, the victim asked McEachern's mother to retrieve her car keys from McEachern so she could leave. When the victim said she would press criminal charges against McEachern, he choked her and pushed her up against a wall with enough force to displace her arm. This display of violence prompted McEachern's mother and another man in the house to come to the victim's aid. At that point, McEachern brandished a handgun and left the home with the victim. As they walked to the vehicle, McEachern said he intended to drive to the James River Bridge, kill her there, and then commit suicide. The victim escaped on foot when McEachern returned briefly into the home to retrieve something.

Bleeding and exhausted, the victim ran to a local church and called the police. Shortly after the police arrived, the victim observed McEachern drive by in her vehicle. After midnight that evening, the victim telephoned McEachern. By this time, the police had either called McEachern or attempted to call him. During a tirade of "yelling" at the victim, McEachern demanded to know why she gave the police his cell phone number. The victim, in turn, demanded the return of her vehicle. McEachern said he abandoned the vehicle with the keys in it at a nearby gas station. The victim took a taxicab to the gas station and found her vehicle there early the next morning.

The Commonwealth proceeded to trial against McEachern on several charges including grand larceny of the victim's vehicle. Specifically finding the "Commonwealth's witnesses are credible," the court rejected McEachern's attack on the credibility of the victim's account of the crime. Finding McEachern guilty, the trial court stated: "It's my determination that the evidence of the Commonwealth is the evidence that the court adopts."

## II.

### SUFFICIENCY OF THE EVIDENCE — INTENT TO PERMANENTLY DEPRIVE

On appeal, McEachern does not challenge the trial court's finding of a trespassory taking. He instead contends the evidence failed to prove he intended to *permanently* deprive the victim of the vehicle.[1] That he later abandoned the vehicle at the victim's request, McEachern argues, demonstrates he intended only to *temporarily* deprive the victim of the vehicle. He concludes with the assertion that the evidence "merely supported a conviction for the lesser-included offense [of] unauthorized use of an automobile under Va. Code § 18.2-102." Appellant's Br. at 14.

Settled principles govern our standard of review. "Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984). A reviewing court does not "ask itself whether *it* believes that the evidence at the

---

[1] The Court granted McEachern's petition for appeal only as to his Question Presented I: "Was the evidence sufficient to prove McEachern guilty of grand larceny where the Commonwealth failed to prove that McEachern intended to deprive [the victim] of her car permanently?" Petition for Appeal at 8-19. We did not grant, and thus do not now address, Question Presented II, which challenged the trial court's finding that the vehicle had a value exceeding $200. We similarly do not decide any other larceny issue (trespassory taking, caption, asportation) unaddressed by any question presented in McEachern's petition for appeal. Under Rule 5A:12(c), only questions "presented in the petition for appeal will be noticed by the Court of Appeals." Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007); McLean v. Commonwealth, 30 Va. App. 322, 329, 526 S.E.2d 717, 720 (1999) (*en banc*).

trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Instead, we ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).[2]

"In Virginia, larceny is a common law crime." Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994). An individual commits larceny by wrongfully taking the property of another "without his permission and with the intent to permanently deprive him of that property." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); see also Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001). "In determining intent, 'the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence.'" Welch v. Commonwealth, 15 Va. App. 518, 524, 425 S.E.2d 101, 105 (1992) (citations omitted). "Indeed, '[t]he specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements.'" Id. (citations omitted). To be sure, "there is not one case in a hundred where the felonious intent in the original taking can be proved by direct evidence. From the nature of the case, intent, generally, must be inferred

---

[2] This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

from circumstances." Skeeter v. Commonwealth, 217 Va. 722, 726, 232 S.E.2d 756, 759 (1977) (citation omitted).

We accept the first premise upon which McEachern builds his argument. "The main difference between common law larceny and the statutory offense of unauthorized use is that in the former there must be an intent to deprive the owner of his property *permanently*, while in the latter the intent is to deprive the owner of possession of his automobile *temporarily* and without any intent to steal the same. The intent with which property is taken determines the offense." Overstreet v. Commonwealth, 17 Va. App. 234, 236, 435 S.E.2d 906, 907 (1993) (quoting Slater v. Commonwealth, 179 Va. 264, 267, 18 S.E.2d 909, 910-11 (1942)) (emphasis in original). Stated another way, "[t]here is no larceny where the defendant, by actual or constructive trespass, takes the property of another with the intent to use it temporarily and thereafter to return it to the owner." 3 Charles E. Torcia, Wharton's Criminal Law § 351, at 396 (15th ed. 1995). We do not accept, however, McEachern's argument that no rational factfinder could have concluded that he intended to permanently deprive the victim of her automobile.

In Virginia, absent countervailing evidence of an intention otherwise, "the wrongful taking of the property in itself imports the *animus furandi*." Bryant, 248 Va. at 183, 445 S.E.2d at 670 (quoting Skeeter, 217 Va. at 725, 232 S.E.2d at 758, in turn quoting Dunlavey v. Commonwealth, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945)). In other words, the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property. Id.; see also Robinson v. Commonwealth, 190 Va. 134, 143-44, 56 S.E.2d 367, 372 (1949); Slater v. Commonwealth, 179 Va. 264, 266-67, 18 S.E.2d 909, 910-11 (1942); Vaughan v. Lytton, 126 Va. 671, 679-80, 101 S.E. 865, 867 (1920); Saunders v. Commonwealth, 18 Va. App. 825, 828, 447 S.E.2d 526, 528 (1994); Welch v. Commonwealth, 15 Va. App. 518, 521-22, 425 S.E.2d 101, 104 (1992).

The *animus furandi* inference has a long history in Virginia cases distinguishing car theft from mere unauthorized use. In Slater, 179 Va. at 264, 18 S.E.2d at 909, for example, a defendant took a vehicle in Virginia and abandoned it in West Virginia. Convicted of larceny, he argued on appeal he intended only to borrow the vehicle, not steal it, and thus should have been allowed a jury instruction on the lesser-included statutory offense of unauthorized use of a vehicle. Applying the *animus furandi* inference, Slater held the trespassory taking itself implied an intent to steal and no other circumstances demonstrated any intent to the contrary. As Slater observed, the defendant's

> own testimony discloses that he intended to deprive the owner of the car *permanently*, for he said that he never intended to return the car but intended to abandon it in Bluefield, West Virginia. When one wrongfully takes property of another with intent to deprive the owner thereof, larceny is complete, though the accused afterwards abandons it. Evidence of the offense of unauthorized use is entirely absent. That of larceny is full handed.

Id. at 267, 18 S.E.2d at 911 (citation omitted and emphasis in original). Similarly, in Robinson, 190 Va. at 134, 56 S.E.2d at 367, a defendant took a vehicle and later abandoned it on a public highway. Relying on the *animus furandi* inference, Robinson rejected the defendant's argument on appeal that he intended only to borrow the vehicle and later return it to its owner. No evidence, Robinson held, suggested the defendant "intended to deprive the owner of the car temporarily." Id. at 143-44, 56 S.E.2d at 372.

Consider, too, Briley v. Commonwealth, 221 Va. 532, 273 S.E.2d 48 (1980), where the defendant took a man captive in his own vehicle and drove around for about twenty minutes. The defendant later abandoned the vehicle — after first killing the vehicle owner — and then stripped it of its parts. On appeal, the defendant argued that no evidence suggested he "intended to take [the car] permanently." Id. at 544, 273 S.E.2d at 56. "We reject his argument out of hand," id., the Virginia Supreme Court ruled. "We can conceive of no more conclusive evidence

of the intent to deprive an owner of his car permanently than the testimony presented in this case that the car was stolen contemporaneously with the murder of its owner and later abandoned and stripped of parts." Id.

Finally, in Tarpley, 261 Va. at 251, 542 S.E.2d at 761, one of the few Virginia cases not applying the *animus furandi* inference, the defendant drove away in the victim's vehicle in an attempt to escape a fight in which several *other* men assaulted the vehicle owner. The defendant did not act in concert with the attackers or participate as an accessory in the assault. These unique circumstances, Tarpley held, undermined any reasonable inference that the defendant intended to steal the vehicle:

> Applying the above-stated standard of review, we conclude that the evidence is insufficient as a matter of law to establish Tarpley's larcenous intent at the time he drove Bruce's [the victim's] car away from the fight. There was no evidence that Tarpley attacked Bruce during the fight or that he assisted anyone who struck Bruce. Although the trial court was entitled to disbelieve Tarpley's account of the fight, the court received no evidence that Tarpley actually participated in the altercation.

Id. at 256, 542 S.E.2d at 764.

Unlike Tarpley, McEachern directly participated in the violent circumstances surrounding the trespassory taking of the victim's vehicle. This fact confirms, rather than refutes, the *animus furandi* inference. Having physically subdued his victim, predicted he would "fucking hurt" her, brandished a firearm to enforce his will, and taken exclusive control over her vehicle, McEachern announced his intent with unmistakable clarity: He told the victim he intended to drive her to the James River Bridge and kill her.[3] His professed plan, had it come to pass as he

---

[3] At trial, McEachern presented a very different account of the incident which, if believed, would lead to very different inferences. The factfinder, however, was at liberty to discount a criminal defendant's "self-serving statements as little more than lying to conceal his guilt." Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008) (citations and quotation marks omitted). On appeal, moreover, "when 'faced with a record of historical facts that supports conflicting inferences,' a court reviewing the sufficiency of the evidence

hoped, would have permanently deprived the victim of her vehicle as well as her life. See generally Cullen v. Commonwealth, 13 Va. App. 182, 186, 409 S.E.2d 487, 489 (1991) ("The evidence of the murder also proved that the taking was wrongful, the car was not taken with the assent of the victim, and was taken with the intent to permanently deprive the owner."); accord Briley, 221 Va. at 544, 273 S.E.2d at 56 (noting as "conclusive evidence" the defendant's murder of the vehicle owner and later abandonment of the stripped down vehicle).[4]

That the intended murder never occurred due to the victim's fortuitous escape does not vitiate McEachern's larcenous intent during the trespassory taking. When McEachern later abandoned the vehicle at a gas station, he was not returning it after a brief, unauthorized loan. The evidence permits an entirely different conclusion — that he was retreating from a foiled attempt at stealing the vehicle and murdering the victim after it became apparent to him the police were involved. "When one wrongfully takes property of another with intent to deprive the owner thereof, *larceny is complete*, though the accused afterwards abandons it." Slater, 179 Va. at 267, 18 S.E.2d at 911 (emphasis added). While an intent to permanently deprive must be shown, actual "[p]ermanent loss by the owner is not a required element of larceny." Jones v. Commonwealth, 3 Va. App. 295, 301, 349 S.E.2d 414, 418 (1986). So long as the *animus furandi* formed during the trespassory taking, see 3 Wharton's Criminal Law § 350, at 395, a later change of mind or desertion of purpose does nothing to expiate the theft.

---

'must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007) (citation omitted). "The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." Id.

[4] See also People v. Abilez, 161 P.3d 58, 86 (Cal. 2007) (making the "threshold" observation that "the defendant killed the car's owner, indicating he did not intend to return the car to her" (quoting People v. Moon, 117 P.3d 591, 607 (Cal. 2005) (internal brackets omitted))).

III.

The evidence supports the rationality of the trial court's finding that McEachern took the victim's vehicle with the intent to permanently deprive her of it.  We thus affirm McEachern's conviction for grand larceny in violation of Code § 18.2-95(ii).

<u>Affirmed.</u>