COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and Haley
Argued at Richmond, Virginia

JOSEPH JAMES BUTOR, II

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 0830-09-2                       JUDGE D. ARTHUR KELSEY
                                                                FEBRUARY 23, 2010

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                                  Samuel E. Campbell, Judge

             (Amanda Nicole Mann; Law Offices of David L.
             Cloninger, on brief), for appellant.  Appellant submitting
             on brief.

             Erin M. Kulpa, Assistant Attorney General (William C.
             Mims, Attorney General, on brief), for appellee.


        The trial court convicted Joseph James Butor, II, of unauthorized use of a vehicle in

violation of Code § 18.2-102.  On appeal, Butor contends the evidence was insufficient to

support his conviction.  We disagree and affirm.

                                              I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).  Our examination of the record "is not limited to the

evidence mentioned by a party in trial argument or by the trial court in its ruling.  In determining

whether there is evidence to sustain a conviction, an appellate court must consider *all the*

--------------------------------------------------------------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*evidence* admitted at trial that is contained in the record." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008) (emphasis added).

Butor moved into the home of Mary Janosik in June 2008. Janosik, a close family friend, provided him with a place to stay and free use of her vehicle.[1] She let him use the vehicle to get back and forth from work so she would not have to transport him. Without fail, he returned the vehicle each night after work. In September 2008, Butor told Janosik he intended to move out. After Butor failed to show up one night after work, Janosik retrieved Butor's cell phone number from a "caller ID" device which had captured his number when he had called her residence on prior occasions. On September 24, Janosik left a voice message on Butor's cell phone.[2] Her message instructed Butor to return her vehicle and pick up his belongings from her home. A short time after Janosik left the voice message, Butor returned to her home to retrieve his belongings. He did not, however, return her vehicle.

On September 25, Janosik reported the matter to the police and secured a warrant for Butor's arrest. Police later found Butor and the vehicle at his mother's residence. A grand jury indicted Butor for unauthorized use of Janosik's vehicle "on or about" September 24 to 25. At trial, Butor took the stand in his own defense and claimed he believed he had Janosik's permission to keep the vehicle even after he moved out of her home. Butor admitted he had a cell phone, but denied Janosik ever left a voice message asking him to return her vehicle and pick up his belongings from her home.

The trial court found Butor, a convicted felon, not credible and accepted in full the inculpatory testimony of Janosik. Finding Butor guilty, the trial court stated: "There's no

---

[1] In her testimony, Janosik refers to Butor as her nephew. Janosik is an ex-sister-in-law of Nancy Simpson, Butor's mother.

[2] At trial, Janosik testified she went to the police the day after leaving the voice message for Butor.

question that [Janosik] revoked her permission for him to have this vehicle after he was gone

. . . . And he had the vehicle sometime after he moved out of the house, and he knew that that

was not proper." Butor appeals his conviction, challenging the sufficiency of the evidence.

## II.

### A. APPELLATE STANDARD OF REVIEW

An appellate court does not "ask itself whether *it* believes that the evidence at the trial

established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 194,

677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979))

(emphasis in original).[3] "Rather, the relevant question is whether '*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted

and emphasis in original). We are "not permitted to reweigh the evidence," Nusbaum v. Berlin,

273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to

preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d

402, 407 (2004).

### B. UNAUTHORIZED USE OF A VEHICLE

To establish unauthorized use of a vehicle, "the Commonwealth needs to show that a

defendant knew he was not authorized to use the vehicle." Montague v. Commonwealth, 40

Va. App. 430, 437, 579 S.E.2d 667, 670 (2003). "The main difference between common law

larceny and the statutory offense of unauthorized use is that in the former there must be an intent

to deprive the owner of his property *permanently*, while in the latter the intent is to deprive the

owner of possession of his automobile *temporarily* and without any intent to steal the same."

---

[3] See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

McEachern v. Commonwealth, 52 Va. App. 679, 684, 667 S.E.2d 343, 345 (2008) (citation omitted and emphasis in original).

A defendant violates Code § 18.2-102 when he knowingly exceeds the scope of his authorized use or continues to use the vehicle after the owner has withdrawn consent:

> When an owner consents to another person having temporary possession of the owner's vehicle, but does not consent to its use beyond a designated period of possession, the statute is violated when such use continues without the owner's consent and is accompanied by an intent to temporarily deprive the owner of possession of the vehicle.

Tucker v. Commonwealth, 268 Va. 490, 494, 604 S.E.2d 66, 68 (2004); see also Overstreet v. Commonwealth, 17 Va. App. 234, 238, 435 S.E.2d 906, 908-09 (1993).

In this case, the trial court specifically found Butor received Janosik's voice message. The evidence supports this finding. After he moved out of her home, Janosik retrieved Butor's cell phone number from her "caller ID," called him using that number, and left a voice message instructing him to pick up his belongings from her home and return her vehicle. See generally Tatum v. Commonwealth, 17 Va. App. 585, 588, 440 S.E.2d 133, 135-36 (1994) (noting a witness's use of "caller ID" to identify a defendant's phone number).[4] Shortly after Janosik left this message, Butor showed up at her home, picked up his belongings, and drove away with her vehicle.

Butor took the stand in his own defense. What he did not say was as telling as what he did say. He offered no explanation for the coincidental timing of his return to Janosik's home. He gave no reason why he chose to pick up his belongings that particular day as opposed to any

---

[4] We do not address whether "[o]ur law of evidence requires certain foundation testimony to establish the identity of the parties to the conversation before a witness may testify as to the substance of a conversation over the telephone or internet." *Post* at 8. Butor did not raise this issue either at trial or on appeal. We thus cannot consider it as a basis for reversing his conviction. See Commonwealth v. Brown, 279 Va. 235, 241-42, 684 S.E.2d ___, ___(2010).

other. He did not deny Janosik's testimony of receiving prior calls placed by him from his cell phone. Nor did he question her assertion that, because of those calls, she was able to capture his cell phone number on her "caller ID" and leave a voice message on his phone. Equally telling, Butor did not claim he had lost his cell phone, misplaced it, replaced it, turned it off, or discovered it was broken. Nor did he claim he received the voice message but did not listen to it until after he left Janosik's home with his belongings and her vehicle. In short, he offered no reason to disbelieve Janosik's testimony (other than his unsupported denial) that she left him the voice message[5] and that he returned to her home in response to it.[6]

The trial court was at liberty to disbelieve the testimony of Butor, a convicted felon,[7] and to "conclude that he was 'lying to conceal his guilt.'" Bly v. Commonwealth, 55 Va. App. 1, 12, 682 S.E.2d 556, 562 (2009) (*en banc*) (citation omitted). "This principle naturally follows from the broader observation that 'whenever a witness testifies, his or her credibility becomes an issue.'" Coleman v. Commonwealth, 52 Va. App. 19, 25-26, 660 S.E.2d 687, 690-91 (2008) (citation omitted). Even when not "*inherently* incredible," a defendant's exculpatory version of events need not be accepted by the factfinder. Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) (emphasis in original).

---

[5] In her testimony at trial, Janosik initially described the message as a text message but later clarified she meant a voice message. Janosik's clarification did not, as Butor contends, render her testimony incredible *in toto*. As the trier of fact, the trial court may resolve any such conflicts for "the power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." James v. Commonwealth, 53 Va. App. 671, 679 n.2, 674 S.E.2d 571, 575 n.2 (2009) (citation omitted).

[6] At trial, Butor likewise did not dispute that the voice message, if received by him, would have terminated his permitted use of Janosik's vehicle. His counsel asked on direct: "Had you received it, what would you have done?" Butor answered: "I would have returned the vehicle to her."

[7] See Code § 19.2-269 (providing "the fact of conviction" may serve to impeach a felon's testimony).

We appreciate, but cannot adopt, our dissenting colleague's contrary view. It rejects the factfinder's conclusion that Butor received Janosik's voicemail and reasons even if he did, his return to Janosik's home to collect his belongings tended to prove his *innocence* rather than his guilt: "I think that a different inference — that the evidence of Butor's return to the house has an exculpatory tendency, albeit a slight one — is more persuasive, since by returning to Janosik's house Butor accepted the risk that Janosik might be at home, that she would find him there, and that she would then personally order him to return her car." *Post* at 13.

On appeal, we cannot "'substitute our judgment for that of the trier of fact' even if our opinion were to differ." Ferguson v. Commonwealth, 51 Va. App. 427, 435, 658 S.E.2d 692, 696 (2008) (*en banc*) (citation omitted). And for good reason: A trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise." Haskins, 44 Va. App. at 12, 602 S.E.2d at 407 (citation omitted). When they sit as triers of fact, trial judges deserve "the wide discretion to which a living record, as distinguished from a printed record, logically entitles them." James v. Commonwealth, 53 Va. App. 671, 677, 674 S.E.2d 571, 574 (2009). "The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them." Id. This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (citation omitted).

III.

Because the evidence supports the trial court's finding that Butor used Janosik's vehicle after she revoked her consent, we affirm his conviction for unauthorized use in violation of Code § 18.2-102.

Affirmed.

Haley, J., dissenting.

A conviction for violating Code § 18.2-102 requires proof that the defendant knew he was not authorized to use the owner's vehicle. Montague v. Commonwealth, 40 Va. App. 430, 437, 579 S.E.2d 667, 670 (2003). In this case, there is no dispute that before the time interval designated within the indictment (September 24-25, 2008), Butor had consent to use the vehicle from its owner, Mary Janosik. Accordingly, the question for resolution is whether the Commonwealth proved beyond a reasonable doubt that Janosik, in fact, communicated *her revocation* of that permission to Butor by the voicemail she purportedly left on his cellular telephone on September 24, 2008. I do not believe the Commonwealth met its burden. I, therefore, respectfully dissent from the majority's opinion.

Janosik admitted she never spoke to Butor on the telephone. The majority is correct that Janosik testified that she did call Butor's cellular telephone. She further testified that the reason she believed she had called Butor's cellular telephone was that the number that she called was displayed on her "Caller ID" device, and Butor had previously called her from the number Janosik read on the display. Yet she did not explain how she could know that this number corresponded to Butor's telephone, and not some other telephone that Butor might previously have used to call Janosik's house. In her testimony, Janosik did not say whether she listened to any recorded greeting before leaving her voicemail message. She never indicated whether the recorded greeting left any instructions for callers seeking to send a message, what those instructions were, or whether she followed those instructions. Nor did she say whether the recorded greeting, if there was one, was a recording of Butor's voice, or whether it, otherwise, announced to callers that they had reached a voicemail service, the purpose of which was to record messages for Joseph Butor and forward to him the same.

Given these uncertainties, I would hold that the Commonwealth's evidence was insufficient as a matter of law to prove that Janosik successfully communicated the revocation of her consent to Butor. Our law of evidence requires certain foundation testimony to establish the identity of the parties to the conversation before a witness may testify as to the substance of a conversation over the telephone or internet. Bloom v. Commonwealth, 34 Va. App. 364, 369-70, 542 S.E.2d 18, 20-21, aff'd, 262 Va. 814, 554 S.E.2d 84 (2001) (internet); Snead v. Commonwealth, 4 Va. App. 493, 496, 358 S.E.2d 750, 752 (1987) (telephone); Armes v. Commonwealth, 3 Va. App. 189, 193, 349 S.E.2d 150, 152 (1986) (telephone).

> Snead first contends that the taped telephone conversation between a person who identified himself as "Leonard Snead" and Special Agent Peters should not have been admitted because no one identified the caller's voice as that of Snead. It is well settled in Virginia that "conversations overheard on a telephone are admissible as substantive evidence when the identity of the parties to the conversation is established, either by direct evidence or by facts and circumstances." Opanowich v. Commonwealth, 196 Va. 342, 351, 83 S.E.2d 432, 438 (1954) (citations omitted); accord Benson v. Commonwealth, 190 Va. 744, 751, 58 S.E.2d 312, 315 (1950). Although it is possible to establish a party's identity by circumstantial evidence, "[a] statement of his identity by the party called [or calling], standing alone, is not generally regarded as sufficient proof of such identity unless it is corroborated by other circumstances." Benson, 190 Va. at 751, 58 S.E.2d at 315 (citations omitted). We agree with Snead that the circumstantial evidence in this case was not sufficient to establish his identity as the caller.

Snead, 4 Va. App. at 496, 358 S.E.2d at 752.

The majority's argument would be more convincing if the record contained evidence more closely resembling the strict proof of identity established by the Commonwealth's evidence in Tatum v. Commonwealth, 17 Va. App. 585, 440 S.E.2d 133 (1994). In Tatum, a panel of this Court held that a witness's testimony that his "Caller ID" display indicated that his daughter called him from the defendant's telephone number at the time of her abduction was not inadmissible hearsay. Id. at 586, 440 S.E.2d at 134. The Court also rejected the defendant's

- 8 -

contention that the Commonwealth failed to prove the reliability of the "Caller ID" device. Id. at

588, 440 S.E.2d at 135-36. The proof that the call came from the defendant included the

following testimony from the witness:

> On direct examination, Mr. Orsini testified, in part, as follows:
>
> A.  I went to answer the phone and I press [sic] this caller ID. I do
>     that automatically. This happened to be Saturday morning,
>     [12:01]. The 10th of August.
>
> Q.  And did you happen to write down that number?
>
> A.  I did. I have notes on that. I do that instinctively every time I
>     get a call at that hour of the evening. It happened to be [12:01]
>     in the morning, Saturday, the 10th of August. And my
>     daughter was on the phone.
>
> Q.  Do you recall from the caller ID what number?
>
> A.  Yes, sir. It was a Maryland number, 301, 248-[****]. And
>     that happens to be a Maryland number, same number I
>     received a call --
>
>       *     *     *     *     *     *     *
>
> Q.  Now when that caller ID number came up did you recognize it?
>
> A.  I recognized it was a Maryland number.
>
> Q.  Did you recognize the number from –
>
> A.  Yes, sir, I did.
>
> Q.  How did you recognize it?
>
> A.  Because I had received previous calls. One was on the -
>     received a previous call on July the 13th, it was a Saturday, at
>     nine-eighteen a.m. and Mr. Tatum was on the phone calling
>     my daughter. I also received another call on the same line --
>
>       *     *     *     *     *     *     *
>
> Q.  Did you recognize the voice?

A. I recognized it after he gave his name. He gave his name, this
    is Mr. Charles Tatum. And I recognized that voice from a
    previous conversation on Mother's Day, May the 12th.

Q. What happened on May the 12th?

A. He asked for my daughter.

                    *     *     *     *     *     *     *

Q. Did you have the caller ID on then?

A. Caller ID was there –

Q. What came up on –

A. Same number. This was a Maryland number.

Id. at 589-90, 440 S.E.2d at 136. The testimony of the witness in <u>Tatum</u> was that he wrote the

phone number down, told the court exactly what the number was, and explained how he knew

that it was the defendant's number: because he recognized the defendant's voice as the person

who made previous calls to his house from the same number, telephone calls in which he had

asked to speak to the witness's daughter. The evidence in this case shows that Janosik did none

of these things.

Of course, our precedents demanding strict proof of the identity of parties to a telephone

communication, including <u>Tatum</u> and <u>Snead</u>, do not directly apply to this case, since the parties

here dispute the sufficiency of the evidence to support a conviction, rather than the admissibility

into evidence of Janosik's testimony about her attempt to send a message to Butor. But the

sufficiency of the evidence to support a conviction here depends on *proof* that Butor received

Janosik's message. It logically follows that proof that Janosik sent the message successfully and

further proof that she sent the message to Butor's telephone were also required. However, the

Commonwealth failed to elicit from Janosik the kind of foundation testimony which would have

been absolutely required before the finder of fact could even have considered the substance of

Janosik's message, if Janosik had delivered her message during the course of an ordinary telephone conversation, *i.e.*, testimony that when she called she recognized the voice of the person who answered as the voice of Butor. Because the standard for the admissibility of evidence is a *less demanding standard* than the standard for determining whether evidence in the record is sufficient to support a criminal conviction, compare Ward v. Commonwealth, 264 Va. 648, 654, 670 S.E.2d 827, 831 (2002) ("Generally, evidence is admissible if it is relevant and its probative value outweighs any prejudicial effect."), and Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994) ("In order to convict an accused of a crime, the evidence must establish the accused's guilt beyond a reasonable doubt and exclude every reasonable hypothesis of innocence."), the failure of Janosik's testimony to meet the test for admissibility under our prior cases concerning telephone conversations is logically inconsistent with the majority's opinion that her testimony supplied proof of an element of the offense.

The majority's answer is that, in the trial court, Butor never objected to the failure to introduce foundation testimony sufficient to establish the identity of the telephone number Janosik called, so our prior cases on this point cannot serve as a basis for reversing his conviction. See footnote 4, supra. According to Rule 5A:18: "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." Butor did waive any objection, based upon an insufficient foundation, to the testimony as to the identity of the telephone number Janosik called.

"Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). Consider the following: A defendant is convicted upon *only irrelevant* evidence, all admitted without objection, but the defendant, nonetheless, makes a motion to strike. Surely we

would not affirm such a conviction by invocation of Rule 5A:18. Rather, we would reverse because the irrelevant evidence was *ipso facto* insufficient, an error preserved by the motion to strike.

A failure to contemporaneously object, in violation of Rule 5A:18, does waive an erroneous admission of evidence as a *singular basis for reversal*. However, that Rule does not necessarily prevent us from considering the legal reasoning of prior evidence cases if they have a logical relationship to the separate issue of the sufficiency of the evidence to support a conviction. As noted above, there is a logical connection between our prior decisions concerning the evidentiary requirement as to the parties to a telephone conversation and the sufficiency of the evidence; that connection is not severed by Rule 5A:18.

I further disagree with the majority's suggestion that Butor's return to the house after Janosik attempted to send him the voicemail message confirms that Butor received the message. There was no dispute that Butor was in the process of moving out of Janosik's house and, thus, nothing remarkable in Butor's return to the house to collect his things. I agree that on appeal we must view the facts in the light most favorable to the party prevailing below, in this case, the Commonwealth. Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003). But our deference to the trial court only demands that we give the Commonwealth the benefit of "all *reasonable* inferences" deducible from those facts, Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009) (emphasis added), and given the facts of this case, the majority's inference is not a reasonable one. Assume, *arguendo*, that Butor *did* receive the voicemail message and, in spite of Janosik's known wishes, intended to illegally retain the use of the vehicle for some additional time period without the consent of its owner. If those were his intentions, why then would Butor return to Janosik's house at all? The most likely answer is because some of Butor's belongings remained at Janosik's house, and he wanted to retrieve

- 12 -

them, a motivation which would have existed whether Butor had received Janosik's message or not. In short, Butor's return to Janosik's house has no logical tendency to prove that Janosik had communicated to Butor the revocation of her prior consent to use her vehicle. Indeed, I think that a different inference – that the evidence of Butor's return to the house has an exculpatory tendency, albeit a slight one – is more persuasive, since by returning to Janosik's house Butor accepted the risk that Janosik might be at home, that she would find him there, and that she would then personally order him to return her car. Compare Tucker v. Commonwealth, 268 Va. 490, 492, 604 S.E.2d 66, 67 (2004) (affirming defendant's conviction for unauthorized use of a vehicle where defendant ignored owner's wishes after owner personally met the defendant in a restaurant and asked him to bring the owner's car back to owner's house).

Even if the evidence at trial proved that Janosik *did* successfully send Butor the message that she described, it does not necessarily follow that Butor listened to the message during the time interval alleged in the indictment, which charges that Butor committed the offense "on or about September 24 through September 25, 2008 . . . ." Janosik's testimony was that after leaving her message she waited a single day before calling the police to report that her car was missing. According to Detective Carmichael, the police took her report on September 25, which means that Janosik attempted to leave Butor a message on September 24th. Because of the dates mentioned in the indictment, the time interval between September 25 and the eventual recovery of Janosik's car is not relevant to the question before us, i.e., whether there is sufficient evidence to support Butor's conviction of the crime charged in that indictment. See Zirkle v. Commonwealth, 189 Va. 862, 873, 55 S.E.2d 24, 30 (1949) ("the Commonwealth is usually confined to the introduction of evidence relevant to the charge stated in the indictment"); cf. Ortiz v. Commonwealth, 276 Va. 705, 715-16, 667 S.E.2d 751, 758 (2008).

Proof that Butor actually listened to his voicemail messages during the time interval alleged in the indictment is indispensable to the majority's ultimate holding that the evidence was sufficient to prove that, during the time interval alleged in the indictment, he continued to use the vehicle, even after he knew that he no longer had the owner's authorization. Because the passage of time between Janosik's message and the end of the time interval alleged in the indictment was a single day, the majority's holding necessarily creates a common law rule that persons with voicemail are legally presumed to listen to their messages every day. No doubt some voicemail users are very attentive in checking their messages, but I am not sure whether the practice is so close to universal that it merits a legal presumption of this kind. By way of comparison, the legislature has decided that a person's failure to pay the amount due on an insufficient funds check may not be used as *prima facie* evidence of an intent to defraud until "five days after [defendant's] receiving written notice that such check draft or order has not been paid to the holder thereof." Code § 18.2-183.

Of course, when a person borrows a vehicle from someone else and has not responded to messages asking him to bring it back, I agree that there is some interval of time after which it becomes reasonable to conclude that the borrower *has* listened to the messages and is ignoring them. If, perhaps, there is a technical problem with the borrower's voicemail or telephone, there is also some interval of time after which it becomes reasonable to assume that the borrower is recklessly ignoring the possibility that the vehicle's owner might want it back. I have my doubts about whether this period of time is only one day. I would not reach the question of what length of time is a reasonable one, because I would decide as a matter of law that there was insufficient evidence to prove that Janosik successfully sent her voicemail message to Butor's telephone.

For the reasons above, I would reverse Butor's conviction and dismiss the indictment. I, therefore, respectfully dissent from the majority opinion.