UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Fulton and White

JAMES G. LEAGUE, S/K/A
  JAMES GRANT LEAGUE

                                                    MEMORANDUM OPINION* BY
v.       Record No. 2170-23-2              JUDGE KIMBERLEY SLAYTON WHITE
                                                         AUGUST 5, 2025

COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF LOUISA COUNTY
                        John R. Cullen, Judge Designate

          (Steven Shareff; Steven Shareff, Attorney at Law, on brief), for
          appellant.  Appellant submitting on brief.[1]

          (Jason S. Miyares, Attorney General; Justin M. Brewster, Assistant
          Attorney General, on brief), for appellee.


        Following a bench trial, the Circuit Court of Louisa County convicted James G. League

of grand larceny of a motor vehicle.  By final order entered on February 21, 2024, the trial court

sentenced him to five years of incarceration with all but six months suspended.  League now

appeals, contending that the trial court abused its discretion by excluding certain video-recorded

hearsay statements.  For the following reasons, we affirm the judgment.[2]

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Appellant's motion to extend the time to file his corrected brief is granted, and the
amended brief filed on January 8, 2025, is considered properly filed.

        [2] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In 2020, Eric Dollins owned property on Chalk Level Road in Louisa County that he inherited from his grandfather in 2016. He stored a Ford sedan and a Buick sedan that he owned on the Chalk Level Road property. He also stored Leland Morton's Jeep Wrangler there. Dollins did not live on the property but visited every few months.

In August 2020, the Ford, Buick, and Jeep all were parked on the Chalk Level Road property. When Dollins next returned in December 2020, they were gone. After calling Morton to ensure that he had not removed the Jeep, Dollins reported the three vehicles as stolen to the police. Although the police eventually recovered the Jeep, Dollins never saw the Ford or the Buick again.

In October 2020, William Smith went to Grant's Garage, an auto shop and salvage yard in Louisa County, to look for car parts. Smith identified League as the proprietor of Grant's. While at Grant's, Smith saw Morton's Jeep and asked to purchase it. League agreed but stated he did not "have the title right now." Smith asked if League could obtain a title; League responded that he could, but "it would take some time." League told Smith that "the person who owned the vehicle died and the children were trying to find the paperwork."

Smith ultimately purchased the Jeep for $2,500 even though League could not furnish a title. League wrote Smith a bill of sale, and Smith believed that League "would give [him] a title eventually" because he ran "a business" and had "put everything down" in the bill of sale.[3]

Smith performed extensive repairs on the Jeep. Sometime in 2021, Smith returned to Grant's Garage and inquired whether League now could provide him a title for the Jeep. League demurred, telling Smith that the children of the purported deceased owner "ha[d] moved" and League had not "figured . . . out how to" locate them yet. Smith later returned to Grant's Garage a third time, but a worker told him that League was not there.

Smith then unsuccessfully attempted to obtain a title for the Jeep from the Department of Motor Vehicles (DMV). In September 2022, Louisa Police Corporal Shreve interviewed Smith regarding the Jeep, and observed it on Smith's property. On September 15, 2022, Corporal Shreve and another officer went to Grant's Garage and spoke with League. League told them that he had "picked . . . up" the Jeep "from a property on Chalk Level Road." He further stated that he did not pay anything for the Jeep because "[h]e was asked to move" it as "junk vehicle."

League also told the officers that he believed that if a vehicle had been abandoned on private property for more than 48 hours, it was lawful for him to remove the vehicle at the property owner's request. Further, League stated that he planned to sell the Jeep for parts. Louisa police officers subsequently seized the Jeep from Smith.

The Commonwealth charged League with two counts of grand larceny of a motor vehicle and one count of obtaining money by false pretense. At trial, Dollins and Morton testified that they had not given anyone permission to take their vehicles from the Chalk Level Road property. Nor

---

[3] When Smith took possession of the Jeep, he found a vehicle service contract and an expired Virginia registration card—both in Morton's name—in the glove box. The vehicle identification number listed on the service contract and registration card matched the number stated on the bill of sale.

had they sold the vehicles. Dollins had never seen League before the proceedings in this case. After a hearing in the general district court, League approached Dollins and told him that League did not "do what they're saying" he did, and "fe[lt] like he legitimately bought" the vehicles. But League also stated that he "want[ed] to make it right" and make Dollins and Morton "whole, monetarily." Additionally, League told Dollins that the Ford and Buick had "burn[ed] up" in a fire on his property.

The Commonwealth played Corporal Shreve's body camera recording of his conversation with League at Grant's Garage on September 15, 2022. When the officers arrived, they stated that they needed to speak with League about "an issue" they were having with "this Jeep." League stated that he acquired the Jeep and two other vehicles[4] from a property on Chalk Level Road. According to League, after the residents were "kicked out" of the house, the property owner told League that if he towed the abandoned vehicles off the property, he could have them for free. League did not recall the property owner's name and did not receive a bill of sale. But he told the officers that the property owner helped move scrap metal so he could maneuver his wrecker into position to tow the vehicles. He also claimed that the property owner later came to the garage and acknowledged that League had towed the Jeep.

League also told the officers that when Smith asked to buy the Jeep, he claimed that he planned to use it for parts and would return it to League when he was finished. But Smith later returned to the garage, told League that he intended to keep the Jeep, and asked for a title. League asserted to the officers that he had the Jeep at his garage for more than a year before Smith purchased it from him in October 2020. He insisted throughout the conversation that he was

_____

[4] League could not remember the make or model of the other two vehicles but agreed with the officers that they could have been a Ford sedan and a Buick sedan.

allowed to remove the vehicles from the Chalk Level Road property because they had been abandoned for more than 48 hours.

At the close of the Commonwealth's case, the parties and the trial court agreed to amend the indictment to merge the two grand larceny charges into a single count alleging that League stole motor vehicles belonging to Dollins and Morton. The trial court granted League's motion to strike the false pretense count.

DMV Special Agent Jennifer Musselwhite testified during the case of the defense that she received a title complaint from Smith in December 2021. She subsequently spoke to both League and Smith. Based on what Smith told her, she suggested that he seek a title for a reconstructed vehicle.

League sought to introduce body camera footage recorded by Louisa Police Sergeant Miller on September 11, 2020. League proffered that Sergeant Miller and Officer Hart visited Grant's Garage that day to interview League about "an entirely different vehicle." While there, Sergeant Miller also asked League about the Jeep. League proffered that he told Sergeant Miller and Officer Hart that he bought the Jeep for parts.

The trial court viewed the video for the purpose of determining its admissibility. After speaking with League for approximately five minutes about an unrelated vehicle, Sergeant Miller asked if he had "pick[ed] up" a red Jeep the previous week. League stated that he bought the Jeep and "two other cars from over there" for parts. Sergeant Miller stated that he saw League's wrecker drive by because he "live[d] two houses down" from the Chalk Level Road property.

League acknowledged that his statements on the proffered video were hearsay. But he asserted that the trial court should admit them as prior consistent statements. He contended that the Commonwealth had placed his credibility at issue by adducing inconsistent statements he made about his acquisition of the vehicles through the testimony of Smith, Corporal Shreve, and the

September 15, 2022 body-camera video. Thus, League contended, he was entitled to introduce prior consistent statements to rehabilitate the credibility of his statement that he paid for the vehicles. The trial court declined to admit the video, agreeing with the Commonwealth that League's credibility was not at issue because he exercised his right not to testify.

After hearing the parties' closing arguments, the trial court convicted League of the amended count of grand larceny of a motor vehicle. The trial court credited Dollins's and Morton's testimony that they had not sold the vehicles or given anyone permission to take them. It also believed Smith's testimony.

Further, the trial court found it unlikely that anyone—rightful owner or otherwise—would have asked League to take the vehicles without compensation. Rather, the trial court concluded, League had committed "a crime of opportunity," stealing the vehicles from the often-unoccupied property on Chalk Level Road. League now appeals, asserting that the trial court abused its discretion by excluding the video of League's hearsay statements to Sergeant Miller that League had purchased the vehicles for parts.

ANALYSIS

This Court reviews a trial court's evidentiary decisions for abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). We will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). The proponent must do so by a preponderance of the evidence. *Id.* Once the proponent satisfies that threshold, "any gaps in the evidence" go to the factfinder's "assessment of its weight rather than its admissibility." *Id.* at 122-23.

- 6 -

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (quoting Va. R. Evid. 2:801(c)). "[I]f evidence is hearsay, it 'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020) (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 133 (2018)); *see* Va. R. Evid. 2:802.

Even if we were to conclude that the trial court erred in excluding League's proffered hearsay evidence, we still would be required to determine whether any such error was harmless. "Code § 8.01-678 makes 'harmless-error review required in all cases,'" including criminal cases. *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) (quoting *Commonwealth v. White*, 293 Va. 411, 420 (2017)). "[E]videntiary errors are subject to non-constitutional harmless error review." *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019). "A non-constitutional error is harmless when 'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Davis v. Commonwealth*, 79 Va. App. 123, 146 (2023) (quoting Code § 8.01-678).

To hold that any evidentiary error was harmless, we must conclude that it "did not influence the [factfinder] or had but slight effect." *Id.* (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016)). "To reach this conclusion, the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison." *Commonwealth v. Kilpatrick*, 301 Va. 214, 217 (2022). Thus, we must consider the challenged testimony "in light of all the evidence that was presented to the jury." *Id.* (quoting *Haas v. Commonwealth*, 299 Va. 465, 467 (2021)).

"An individual commits larceny by wrongfully taking the property of another 'without his permission and with the intent to permanently deprive him of that property.'" *McEachern v.*

*Commonwealth*, 52 Va. App. 679, 684 (2008) (quoting *Stanley v. Webber*, 260 Va. 90, 96 (2000)). In determining whether the defendant acted with the required intent, the factfinder may, and often must, consider his conduct "and all the circumstances revealed by the evidence." *Id.* (quoting *Welch v. Commonwealth*, 15 Va. App. 518, 524 (1992)). Specifically, "the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property." *Id.* at 685.

League never contested that he towed the three vehicles from the Chalk Level Road property. Dollins and Morton both testified that they did not sell their vehicles or give anyone permission to take them. The trial court, as the factfinder, credited this uncontested testimony. Accordingly, the evidence established that League took the vehicles without lawful authority.

League nonetheless contends that the Commonwealth failed to prove that he intended to steal the vehicles. He argues that the excluded hearsay statements that he bought the Jeep for parts "were highly material and relevant" because the trial court did not believe that anybody would offer League the vehicles for free. Thus, League claims, "[t]he proffered statements that [he] actually purchased the cars for parts directly undermined the [trial] [c]ourt's rationale."

We disagree. As noted above, the trial court's reasoning began with its finding that League towed the vehicles from the Chalk Level Road property without the permission of the lawful owners. Thus, the trial court was entitled to conclude that League intended to steal the vehicles unless other circumstances negated that inference. League appears to assert that some unknown person authorized him to take the vehicles, whether for payment or for free. But there is no evidence regarding this person's identity, and League did not identify him or her in the proffered video clip. Nor is there any documentary evidence that League purchased the vehicles.

Given these circumstances, the trial court's consideration of an additional video where League claimed he purchased the vehicles for parts would not have affected its conclusion that

League stole them. Moreover, the admission of the September 2020 video would not have negated League's other inconsistent or incredible statements regarding his acquisition of the vehicles. For example, League's claims to the officers in the September 2022 video that the Jeep sat at his garage for a year before Smith purchased it in October 2020 is contradicted by Dollins's testimony that the vehicles were on his property in August 2020. In addition, League repeatedly told the officers in September 2022 that he believed he had authority to remove the vehicles from the Chalk Level Road property because the residents had been evicted and had abandoned the cars. But this account is irreconcilable with Dollins's testimony that he had inherited the property in 2016. It also conflicts with League's statement to Smith that he acquired the Jeep from the deceased owner's children.

In sum, the Commonwealth presented strong circumstantial evidence that League stole the vehicles, including multiple inconsistent and contradictory statements by League himself. Particularly given the trial court's factual findings, we cannot say that the introduction of an additional video clip of League claiming that he bought the vehicles would have affected the verdict. Accordingly, any possible error in excluding that video was harmless. *See Davis*, 79 Va. App. at 146.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*