COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, White and Senior Judge Annunziata
Argued by videoconference


TARON JARRELL THOMAS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1566-23-4                 JUDGE MARY BENNETT MALVEAUX
                                                       JANUARY 13, 2026
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Kimberly A. Irving, Judge

Hasina A. Lewis (Lewis Law, PLLC, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Taron Jarrell Thomas ("appellant") of second-degree murder, in

violation of Code § 18.2-32, aggravated malicious wounding, in violation of Code § 18.2-51.2,

conspiracy to commit robbery, in violation of Code §§ 18.2-58 and -22, attempted robbery, in

violation of Code §§ 18.2-58 and -26, and two counts of use of a firearm in the commission of a

felony, in violation of Code § 18.2-53.1.  On appeal, appellant argues that the trial court erred in:

(1) admitting certain text messages and photographs; (2) overruling objections to witness

testimony; (3) denying his motion to strike; and (4) refusing his requested jury instructions and

granting the Commonwealth's proposed instruction.  For the following reasons, we find no error

and affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. BACKGROUND[1]

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On December 22, 2020, Matthew Costanzo and his girlfriend, Katelyn Lawmaster, drove to a shopping center so Costanzo could sell marijuana. An individual named Trey James helped set up the deal. Costanzo and Lawmaster arrived at the shopping center at around 9:00 p.m. As Costanzo pulled into the parking lot, he felt that the drug deal seemed suspicious, so he pulled his gun out from the side door of the car and put it into his front hoodie pocket.

Costanzo parked two spaces away from a BMW already parked in the lot. Costanzo was sitting in the driver's seat, and Lawmaster was in the front passenger's seat. Lawmaster testified that a man exited the BMW and got into Costanzo's car on the rear passenger's side. Costanzo said "what's up" without turning around to look at him. Lawmaster then saw another man in the back of the BMW holding a gun get out and run towards her with the gun pointed at her and Costanzo. The man "swung" open her door and began shooting. Lawmaster believed she was shot first but heard "at least ten" shots during the incident. After Lawmaster was shot, she looked over and saw Costanzo slouched over on the steering wheel with bullet wounds that were still "smoking." Costanzo was shot eight times, and he was pronounced dead at the hospital

---

[1] A portion of the record in this case was sealed, but the appeal necessitates unsealing certain relevant portions of the record to resolve the issues raised by appellant. Consequently, "[t]o the extent that we mention facts found only in the sealed record, we unseal only those specific facts, finding them relevant to our decision in this case. The remainder of the previously sealed record remains sealed." *Chenevert v. Commonwealth*, 72 Va. App. 47, 52 n.1 (2020) (alteration in original) (quoting *Church v. Commonwealth*, 71 Va. App. 107, 112 n.1 (2019)).

shortly after arriving there. The surgeon who treated Lawmaster testified that she suffered "penetrating injuries to the arm and to the abdomen from a gunshot wound."

About 500 yards away from Costanzo's car, police found a man shot in his left forearm or wrist and in his groin. Police body-worn camera footage depicted an officer ask this man what his name was, and he twice responded, "Taron." When the officer asked how many other people he was with, he responded, "one."

Appellant was treated at the hospital for his injuries. A police officer who was with him testified that appellant used the hospital phone to call someone, and appellant asked that person if they had his phone. Appellant next asked the person to look through his messages before asking, "Where they caught him at?"

Two cars were identified at the scene: Costanzo's black Toyota Camry and a silver BMW. Police found a Walther Model PPS 9-millimeter Luger pistol on the ground about ten feet in front of the BMW. A SCCY Model CPX2 9-millimeter Luger pistol that Lawmaster's father bought for Costanzo was found in the Camry between the front driver's seat and the door. Police also found marijuana inside a backpack in Costanzo's Camry.

Two cell phones were found in the center console of the BMW. Detective Katherine Zaimis, of the Prince William County Police Department, conducted a digital forensic examination of the two phones. She examined personal identifying information discovered on the phones, including Apple ID email addresses associated with the phones, contact information in each phone, photos, and text messages. Zaimis testified that based on her forensic examination, she determined one of the phones was appellant's and the other belonged to Daquil Smith, appellant's brother. Six text messages Zaimis extracted from the phones were sent from Smith's phone to appellant's phone during the few days leading up to the shooting. All six messages were deemed read by the recipient, but no text messages were sent in response. These

text messages described finding and hitting a "lick," as well as being "polled." During trial, Detectives Cupka and Perla with the Prince William County Police Department testified that the term "lick" is commonly used to refer to a robbery and being "polled" is commonly used to refer to being armed. Neither detective was certified as an expert in slang terminology.

Three photographs extracted from Smith's cell phone were introduced at trial. Each depicted three black males, with one of the males holding a firearm and wearing a blue hoodie containing the phrase, "Just Do It." The photographs also included metadata indicating that each was "created" at 7:00 p.m. on December 21, 2020, the night before the shooting.

At trial, an expert in firearms identification from the Virginia Department of Forensic Science testified about the cartridge casings and projectiles found at the scene of the shooting. She testified that there was one bullet and one cartridge case from the SCCY gun, six cartridge cases from the Walther gun, four bullets and one bullet fragment that could not be eliminated from the Walther but could be from another gun, and seven additional cartridge cases from another unknown gun. This expert explained that there were also remaining projectiles that could be from an additional unknown gun, for a total of five potential guns used in the shooting.

At trial, Lawmaster testified that the shooter was a black male wearing a blue hoodie pulled over his head. One of the officers who rendered aid to appellant after he was shot identified him at trial as the man "wearing a blue hoodie" the night of the shooting.

After the Commonwealth rested, appellant moved to strike all the charges. The trial court denied the motion in its entirety. After the conclusion of all the evidence, appellant renewed his motion to strike, which the court also denied. The jury found appellant guilty of felony murder, second-degree murder, two counts of use of a firearm in the commission of a felony, aggravated malicious wounding, conspiracy to commit robbery, and attempted robbery. While appellant was not found guilty of first-degree murder as charged, the jury found appellant guilty of both

felony murder and second-degree murder for killing Costanzo. Appellant filed a post-trial motion arguing that punishment for both offenses would violate double jeopardy protections under the federal Constitution. The trial court granted the motion and dismissed the felony murder conviction, leaving second-degree murder as the sole murder conviction.

This appeal followed.

## II. ANALYSIS

### A. Admission of Text Messages

Appellant argues the trial court erred in admitting the text messages purporting to be from Smith to appellant. He contends the Commonwealth did not provide an adequate foundation to establish who owned the phone that received these text messages.

"'Generally, the admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject the trial court's decision absent an abuse of discretion." *Dalton v. Commonwealth*, 64 Va. App. 512, 521 (2015) (quoting *Midkiff v. Commonwealth*, 280 Va. 216, 219 (2010)). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001) (quoting *Witt v. Commonwealth*, 215 Va. 670, 674 (1975)). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. This principle applies equally to statements made through text messages, over email, or using social media. *Atkins v. Commonwealth*, 68 Va. App. 1, 8 (2017). "'[T]he completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility,' with the responsibility of determining the threshold question of admissibility resting with the trial court." *Id.* at 9 (quoting *Armes v. Commonwealth*, 3 Va. App. 189, 193 (1986)).

On one of the two cell phones police recovered from the center console of the BMW, Detective Zaimis extracted text messages sent on December 19, 2020 that stated: "find a lick im coming this week" and "we need to hit like 3 licks nbs ima slide for like a week and a half." She also extracted a text message sent on December 21, 2020, which stated: "put me on that lick don't forget." Other messages sent on December 22, 2020, stated: "yooo we up dat college rn my man called me and said he got a lick on 20 bands and he tryna find sb"; "bro you got ya gat and my folks got ars glocks and all types of shit we both gon be polled"; and "bro don't tell nb this is a easy score and we still gon give trey some bread on da strength this a fucking scoreeeeeeeeeeeeee."

Zaimis determined the phone sending these text messages belonged to Smith because the data showed the phone was associated with an Apple ID email address of "quilnumba9@gmail.com" and each of these text messages came from a phone with the internal contact name as "Daquil." These text messages were sent to the other phone found in the center console of the BMW. The contact name on Smith's phone for the recipient was "lil brudda." The phone data shows that the recipient of these text messages read each message shortly after receiving it, but did not respond. Zaimis also determined the phone that received and read these messages belonged to appellant, based in part on the fact that this phone contained an Apple ID email address of "taron.thomas01@gmail.com."

On appeal, appellant argues the Commonwealth identified him as the owner of the phone that received these texts based solely on the fact that the phone contained an Apple ID email of "taron.thomas01@gmail.com." He contends that because the Commonwealth failed to provide any replies from this phone purporting to be from him, and no other identifying information was

provided, the Commonwealth "failed to establish that [he] was the owner of the phone and intended recipient of the messages."[2]

We disagree. Here, additional evidence in the record supports the trial court's finding that appellant was the owner of the phone and intended recipient of the text messages. The phones were found in the car that the man in the blue hoodie was seen exiting. The Apple ID of one of the phones corresponded to appellant's first and last name. While in the hospital, appellant made statements on the hospital phone to another individual asking about where his phone might be and expressing concern over the contents of his messages. And the contact name for the phone number receiving the messages was saved as "lil brudda" in Smith's phone.[3] Based on this evidence, and applying the preponderance of the evidence standard, the text messages met the baseline requirement of admissibility. Accordingly, the trial court did not abuse its discretion in concluding the Commonwealth laid an adequate foundation to authenticate the text messages and render them admissible.

---

[2] On brief, appellant also argues that "text messages constitute writings for purposes of the best evidence rule" and contends that a writing must be authenticated before it can be entered into evidence. But appellant did not object on best evidence grounds when the Commonwealth sought to introduce these text messages. In fact, when the trial court asked appellant's counsel if there would be a best evidence objection to the text messages, counsel responded, "[n]o, Your Honor." Therefore, appellant has waived his best evidence rule argument presented for the first time on appeal. *See* Rule 5A:18.

[3] Appellant relies on this Court's ruling in *Garnett v. Commonwealth*, No. 1573-15-2 (Va. Ct. App. Dec. 20, 2016), for the proposition that proximity alone is insufficient to prove ownership, and likewise contends that at trial, the evidence presented was too attenuated to prove ownership of the phone and authentication of the messages. But in *Garnett*, the officers could not recall where the phone was found; there were no statements made by Garnett regarding the phone; and there was no "evidence from other people who may have sent or received text messages from appellant." *Id.*, slip op. at 6. Thus, we find *Garnett* factually distinguishable from the case at hand.

B. Admission of Photographs

Appellant argues the trial court erred in denying his motion to exclude the photographs purporting to depict appellant with a firearm. Appellant contends the photographs were not relevant and were inadmissible propensity evidence.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Atkins*, 68 Va. App. at 7 (alteration in original) (quoting *Adjei v. Commonwealth*, 63 Va. App. 727, 737 (2014)). The trial judge "closest to the contest is the judge best able to discern where the equities lie." *Thomas v. Commonwealth*, 62 Va. App. 104, 111-12 (2013) (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). "Evidence is relevant is if it has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" *Commonwealth v. Carolino*, 303 Va. 399, 411 (2024) (quoting Va. R. Evid. 2:401)). "[E]vidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice." *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 53 (2020) (alteration in original) (quoting *Norfolk & Portsmouth R.R. v. Wilson*, 276 Va. 739, 743 (2008)). "All evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence is powerful because it accurately depicts the gravity . . . of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Fields v. Commonwealth*, 73 Va. App. 652, 672-673 (2021) (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)).

Here, the court admitted three photographs found on Smith's phone and the metadata for each photo. In each photo, there are three males, and one of the males is wearing a blue hoodie that says, "Just Do It," and is holding a firearm.

Appellant argues the photographs are irrelevant propensity evidence. We disagree with appellant's argument. The photos were relevant to aid in the identification of the shooter. The photographs depict a male holding a gun and wearing the same clothes that Lawmaster testified the shooter was wearing. The photos could then be compared to the police body-worn camera footage that was admitted where appellant was found near the crime scene wearing the same clothes and identified himself by name. In appellant's motion to strike the evidence, he argued that the identity of the shooter remained at issue. Because the photographs were probative of the identity issue at trial, we reject appellant's argument that they were irrelevant and thus inadmissible.

Further, the photographs were not more prejudicial than probative. In addition to identification purposes, the photos are probative of appellant's access to a firearm the night before the shooting. Considering the probative value of the photographs, we cannot say the trial court abused its discretion when it determined that the photographs' probative value was not substantially outweighed by their prejudicial effect. For these reasons, the trial court did not abuse its discretion in admitting the three photographs.

C. Slang Term Testimony

Appellant argues the trial court erred when it admitted lay opinion testimony provided by detectives related to the definition of slang terms in the text messages. Specifically, appellant takes issue with the opinion of the terms "lick" and being "polled" because the detectives were not certified at trial to be experts in slang terminology.

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "Only when reasonable jurists could not differ can we say an abuse of discretion has

occurred." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). By definition, a trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

At trial, the Commonwealth called Detective Cupka to testify to his familiarity with slang terms. Cupka testified without objection that a "lick" is "[c]ommonly used to refer to a robbery." When the Commonwealth asked Cupka to interpret what the sender of the text messages meant, appellant objected, arguing that a proper foundation had not been laid, and his objection was sustained. Cupka was next asked about his knowledge of the term "polled." Appellant objected to testimony regarding the definition of being "polled," again arguing lack of foundation, and that objection was sustained. But appellant did not object when Detective Cupka was asked how he knew the definition of "polled" and testified that, "I've seen that term used in association with being armed." Detective Perla also testified about his knowledge of slang terms. The Commonwealth asked him what the term "lick" meant, and appellant objected, but did not provide a basis for his objection. The trial court overruled the objection, and Perla testified that a "lick" is "a term used typically to conduct an armed robbery."

Appellant argues the trial court erred in admitting the detectives' lay opinion about the definition of slang terms in the text messages. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." This Court "will not consider an argument on appeal which was not presented to the trial court." *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998). Accordingly, Virginia's "[p]rocedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297

- 10 -

Va. 730, 743 (2019). "Consequently, neither an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Id.* at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)).

The record demonstrates that at trial, appellant did not object to Detective Cupka's and Detective Perla's testimony on the basis that it was impermissible lay opinion regarding a matter only an expert may testify to. Instead, appellant only raised a foundation objection, and appellant did not provide a basis for his objection to Detective Perla's testimony. *See Parker v. Commonwealth*, 14 Va. App. 592, 596 (1992) ("If a party disagrees with the action of the trial court, the statement of an objection *and the grounds of the objection are required*." (emphasis added)). Accordingly, Rule 5A:18 bars this Court's consideration of appellant's argument raised for the first time on appeal.

D. Sufficiency of the Evidence

Appellant argues the trial court erred by denying his motions to strike[4] the charges of first-degree murder, aggravated malicious wounding, use of a firearm during the commission of a felony, conspiracy to commit robbery, and attempted robbery.[5]

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013). "When an appellate court reviews

---

[4] In his assignment of error IV, appellant argues the trial court erred in denying his motion and renewed motion to strike. After the trial court denied appellant's first motion to strike the Commonwealth's evidence, he presented evidence on his behalf. At the conclusion of all the evidence, appellant renewed his motion to strike. "[W]hen a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion." *Rompalo v. Commonwealth*, 72 Va. App. 147, 154 (2020) (quoting *McDowell v. Commonwealth*, 282 Va. 341, 342 (2011)). Accordingly, appellant has waived reliance on his first motion to strike.

[5] Appellant was also convicted of a second count of use of a firearm in the commission of a felony related to the aggravated malicious wounding charge. Appellant does not challenge the sufficiency of the evidence of that conviction.

the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The reviewing court 'does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (quoting *Davis v. Commonwealth*, 65 Va App. 485, 500 (2015)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cappe v. Commonwealth*, 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "In reviewing the sufficiency of the evidence on appeal, this Court will affirm the decision unless the judgment was plainly wrong or the conviction lacked evidence to support it." *Drexel v. Commonwealth*, 80 Va. App. 720, 747 (2024).

And "[w]hen considering the sufficiency of the evidence, an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams*, 71 Va. App. at 483 (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances" may lead a reasonable juror to a conclusion. *Id.* at 512-13 (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

### a. First-Degree Murder

Appellant argues the evidence presented at trial was insufficient to sustain a conviction for first-degree murder. Since he did not know Costanzo or set up the drug deal, appellant argues he could not have formed premeditation to kill Costanzo.

Murder in the first degree requires the Commonwealth to show that the defendant "committed a 'willful, deliberate, and premeditated killing.'" *Castillo v. Commonwealth*, 70 Va. App. 394, 416 (2019) (quoting Code § 18.2-32). Whether or not a killing was premeditated "is a question to be resolved by the finder of fact." *Schmitt v. Commonwealth*, 262 Va. 127, 143 (2001). "Premeditation is an intent to kill that needs to exist only for a moment." *Green v. Commonwealth*, 266 Va. 81, 104 (2003). On a sufficiency challenge, the "evidence showing that the premeditation was only slight or momentary is sufficient to sustain the conviction." *Jackson v. Commonwealth*, 267 Va. 178, 204 (2004). "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Viney v. Commonwealth*, 269 Va. 296, 301 (2005). Further, "[i]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (alteration in original) (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011)). "[E]vidence of a mortal wound inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994).

The jury convicted appellant of the lesser-included offense of second-degree murder. On appeal, appellant specifically argues that "[t]he evidence adduced at trial as a matter of law was insufficient to sustain a *conviction* for First Degree Murder" and that "[t]here is no evidence . . . that amounted to the formation of the requisite intent to support *a conviction* for the offense of First-Degree Murder." (Emphases added). Because appellant's only argument relates to the sufficiency of the evidence to support a conviction for an offense he was not convicted of, his argument is flawed. The assigned error relates to an alleged finding that was never made by the jury and is thus meritless. *See, e.g.*, *Gibson v. Commonwealth*, 276 Va. 176, 180-81 (2008)

- 13 -

(holding that the issue presented in the appellant's assignment of error "is not properly before [the Court] because the record reflects no ruling of the trial court" alleged by the appellant; the "assignment of error [was] based upon a faulty premise concerning what actually transpired in the trial court").

### b. Use of a Firearm in the Commission of a Felony

Appellant also argues there was insufficient evidence to support a conviction for use of a firearm in the commission of the murder. Appellant contends there was no evidence presented to place the Walther firearm in appellant's possession and he was "eliminated as a contributor to the DNA, item 182, that was found on the Walther gun."

Under Code § 18.2-53.1, it is "unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder."

Here, there was sufficient evidence to allow the jury to consider the charge of use of a firearm in the commission of a felony. The evidence supports the reasonable inference that Lawmaster first saw appellant, the man in the blue hoodie, in the back seat of the BMW holding a gun and then again when he exited the car, "swung open the door," and began shooting.

Appellant focuses on the evidence that his DNA was not found on the Walther gun located near the BMW. This argument isolates just one fact and ignores the Commonwealth's evidence suggesting there were multiple guns used in the shooting. At trial, one of the Commonwealth's experts testified that multiple bullet cartridge casings found were "not fired in the Walther or the SCCY pistol." Viewing the evidence in totality, the trial court did not err in denying the motion to strike the charge of use of a firearm in the commission of a felony.

c. Aggravated Malicious Wounding

Appellant argues the Commonwealth's evidence was insufficient to support his conviction for aggravated malicious wounding because it failed to show his specific intent to maim, disfigure, or kill Lawmaster. Appellant argues he did not have a prior relationship with Lawmaster, and thus he did not have the requisite "intent to main, disfigure, disable or kill Ms. Lawmaster when he shot her." The fact that Lawmaster was shot, appellant contends, is insufficient to prove malicious intent.

Pursuant to Code § 18.2-51.2, if a person "maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill," they shall be guilty of aggravated malicious wounding. Malice consists of "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice can be proven by circumstantial evidence, and it may also be inferred from acts and conduct that result in an injury. *See Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019); *see also Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019). More specifically, "malice may be 'inferred from the deliberate use of a deadly weapon.'" *Tizon*, 60 Va. App. at 11 (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). "[T]he existence or absence of 'malice "is a question of fact to be determined by"' the factfinder." *Meade v. Commonwealth*, 74 Va. App. 796, 814 (2022) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)).

As previously established, the record does not show that Lawmaster provoked or threatened appellant while she was sitting in the car on her phone when appellant came running at her with a gun. Evidence of appellant's unprovoked attack and deliberate use of a deadly weapon to shoot Lawmaster was sufficient to allow a trier of fact to infer appellant acted with

malice. Based on the foregoing, the trial court did not err in finding the evidence was sufficient to support a conviction for aggravated malicious wounding.

### d. Conspiracy to Commit Robbery

Appellant also argues the evidence failed to support a conviction for conspiracy to commit robbery. Specifically, appellant argues the evidence did not show he formed an agreement with Smith to commit a robbery.

A conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." *Speller v. Commonwealth*, 69 Va. App. 378, 389 (2018) (quoting *Wright v. Commonwealth*, 224 Va. 502, 505 (1982)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense," and an "overt act in furtherance of the underlying crime" is not necessary. *Gray v. Commonwealth*, 260 Va. 675, 680 (2000). This Court has held that where two or more people act to pursue the same objective, "one performing one part and the other performing another part so as to complete it or with a view to its attainment, [the fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object." *Combs v. Commonwealth*, 30 Va. App. 778, 788 (1999) (alteration in original) (quoting *Amato v. Commonwealth*, 3 Va. App. 544, 552 (1987)). "[F]rom the very nature of the offense, [conspiracy] often may be established only by indirect and circumstantial evidence." *Wright*, 224 Va. at 505 (quoting *Floyd v. Commonwealth*, 219 Va. 575, 580 (1978)). "It is a rare case where any 'formal agreement among alleged conspirators' can be established." *James v. Commonwealth*, 53 Va. App. 671, 678 (2009) (quoting *Wilder Enter. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1141 (4th Cir. 1980)).

Here, the record provides sufficient evidence to support a conviction for conspiracy to commit robbery. The Commonwealth's circumstantial evidence demonstrated that the two phones found in the BMW on the scene belonged to Smith and appellant. Smith sent numerous

texts to appellant about finding a "lick," which detectives testified meant a robbery. The messages also included the slang term of being "polled," or armed, for the "lick." Each of these messages was read by the appellant shortly after being sent.

The record also includes three photographs found on Smith's phone that depict a man posing with a gun and wearing a blue hoodie the night before the shooting. The jury, as fact finder, was able to compare these photos with the depiction of appellant in the body-worn camera footage taken shortly after the shooting and conclude that it was appellant shown in the photos. The timing of when these photos were taken in relation to the text messages sent about finding a robbery and being armed provides circumstantial evidence that appellant entered into the conspiracy with Smith to commit a robbery. And appellant's presence at the drug deal provides further circumstantial evidence that he was in agreement with Smith's invitation to commit a robbery. Because there was sufficient evidence to support a conviction of conspiracy to commit robbery, the trial court did not err.

e. Attempted Robbery

Finally, appellant argues the evidence in support of the charge of attempted robbery was insufficient because he did not set up the drug deal and did not know Costanzo. Further, appellant asserts that Lawmaster never testified that she or Costanzo were being robbed.

"[T]o convict a defendant of attempted robbery, 'the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation.'" *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (alterations in original) (quoting *Pitt v. Commonwealth*, 260 Va. 692, 695 (2000)). "Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a *direct*, but ineffectual, act *to accomplish the crime*." *Id.* (alteration in original) (quoting *Pitt*, 260 Va. at 695). The direct but ineffectual act is "commonly referred to

as an 'overt act.'" *Id.* (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)). What constitutes an over act "is often a difficult one to determine, and no general rule, which can be readily applied as a test to all cases, can be laid down . . . . Each case must, therefore, be determined upon its own facts." *Jones*, 70 Va. App. at 318-19 (alteration in original) (quoting *Jay*, 275 Va. at 525). It is "universally conceded that the fact of an accused's flight . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992).

The evidence supports the reasonable inference that appellant and Smith planned a robbery and attempted to execute it, but abandoned the plan when Costanzo fired his gun in response. The content of the text messages and photographs further support the attempted robbery charge by providing a timeline of events leading up to the drug deal. One of the text messages also described a plan to give Trey some "bread" from the "score." Following the attempted robbery, marijuana was found in Costanzo's car and appellant was found injured near the scene. While appellant may not have been the individual who set up the drug deal, the jury could reasonably infer that he took an overt act in furtherance of the robbery by being involved in planning, attending the drug deal, running towards Costanzo's car with a gun, and shooting the victims. While there was no evidence presented showing appellant tried to take anything from Costanzo or Lawmaster, it can also be reasonably inferred that because appellant was shot in retaliation, he abandoned the robbery and fled without taking anything. A defendant need not "perform the 'last proximate act'" of a robbery to be convicted of attempt. *Sizemore v. Commonwealth*, 218 Va. 980, 986 (1978). Viewing the totality of evidence in the light most favorable to the Commonwealth, we conclude that the jury did not err in finding the evidence sufficient to support a conviction for attempted robbery.

E.  Jury Instructions for Accident, Heat of Passion, Degree of Homicide, and Self-Defense

Appellant contends the trial court erred in denying his request to include jury instructions concerning accident, heat of passion, degree of homicide, and self-defense.  In support of this assignment of error, his brief includes a single sentence that reads, "[t]he Trial Court erred when the Defense was barred from including the jury instructions for accident, heat of passion, degree of homicide, and self-defense."

Pursuant to Rule 5A:20(e), an opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant," this Court may deem the issue waived.  *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)).  Further, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* at 746 (alteration in original) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).  Here, appellant failed to include a standard of review, argument, or principles of law and authorities.  Since appellant failed to develop any argument pertaining to this assignment of error, the argument is waived on appeal.

F.  Jury Instruction for Concert of Action

Appellant argues the trial court erred in overruling his objection to the Commonwealth's proposed jury instruction for concert of action.  Appellant alleges he did not go to the shopping center to commit a wrongful act and was unaware that a drug deal with Costanzo was going to take place, so he could not have acted in concert for a wrongful act that he did not participate in.

"The responsibility of properly instructing a jury 'rest[s] in the sound discretion of the trial court.'" *Holmes v. Commonwealth*, 76 Va. App. 34, 52 (2022) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). Appellate courts "review[] jury instructions to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Payne v. Commonwealth*, 292 Va. 855, 869 (2016) (quoting *Lawlor*, 285 Va. at 228). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Id.* (quoting *Lawlor*, 285 Va. at 228). And "[w]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Id.* (quoting *Lawlor*, 285 Va. at 228-29). This Court reviews "a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes*, 76 Va. App. at 53 (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)).

Contrary to appellant's argument, the record contains evidence indicating that appellant acted in concert with another. Lawmaster testified she saw another individual in the BMW the man in the blue hoodie was seen exiting. When officers were rendering aid to appellant after he was shot, he admitted he was with one other person. The forensic evidence also showed that there were likely more than two guns used in the crime because of the nature of the bullets, casings, and fragments found. Finally, the photographs and text messages provided circumstantial evidence that there were others involved in the shooting. Accordingly, the trial court did not abuse its discretion in giving the concert of action instruction.

III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*